IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERICULO HENDERSON, | ) | Case No. 4:20-CV-283 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN BRIAN COOK, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.     INTRODUCTION

Pro se Petitioner, Ericulo Henderson ("Mr. Henderson"), seeks a writ of habeas corpus under 28 U.S.C. § 2254 and asserts six grounds for relief. (ECF No. 1.) After a jury convicted Mr. Henderson of one count of felonious assault and two counts of felony child endangering, the trial court sentenced him to an eight-year term of imprisonment on the second-degree felony child endangering count (Count Three) based on its finding that the other two counts merged for sentencing purposes.  According to the Ohio Department of Rehabilitation and Corrections website, Mr. Henderson was previously an inmate at Southeastern Correctional Institution but is now currently under Adult Parole Authority supervision.[1]

Respondent, Brian Cook ("Warden"), filed an answer/ return of writ on July 31, 2020. (ECF No 7)  Mr. Henderson filed a 2-page traverse with 101 pages of exhibits on February 16, 2021.

---

[1] *See* https://ohio.gov/residents/resources/offender-search (last visited Feb. 21, 2013).  Mr. Henderson's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

(ECF No. 19.) On October 19, 2022, I granted Mr. Henderson's renewed motion to file a corrected

traverse ("Motion to Supplement," ECF No. 22) based on his representation that, due to a clerical

error on the part of the Clerk's Office, the entirety of his initial traverse was not filed on the docket.

Mr. Henderson's corrected traverse totals 256 pages.[2]

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a

report and recommendation on Mr. Henderson's petition and other case-dispositive motions after the

retirement of Magistrate Judge Baughman. For the foregoing reasons, I recommend that Mr.

Henderson's claims be DISMISSED and/or DENIED. I further recommend that this Court not grant

Mr. Henderson an evidentiary hearing or a certificate of appealability.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of

fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and

convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1);

*Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir.

2001). This presumption of correctness applies to factual findings made by a state court of appeals

based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the

Seventh District summarized the facts as follows on direct appeal:

{¶ 2} Appellant was indicted for one count of felonious assault in violation of R.C. 2903.11(A)(1)(D), a second-degree felony; one count of second-degree felony child endangering in violation of R.C 2919.22(B)(3)(E)(1)(3); and two counts of third-degree felony child endangering, in violation of R.C. 2919.22(A)(E)(1)(2)(c) and R.C. 2919.22(B)(3)(E)(1)(3). 12/30/14 Indictment. The incident leading to this indictment occurred between October 4, 2014 and October 12, 2014. The victim was an 11 year old male child.

{¶ 3} Appellant was the child's tutor on two occasions. Trial Tr. 168-169. The first time Appellant tutored the child, the child was seven years old. Trial Tr. 311. The tutoring was

---

[2] As a result, discussion of and citation to "the traverse" contained within this Report and Recommendation refer to the corrected/supplemental traverse (ECF No. 22-1), not the initial traverse (ECF No. 19.)

mainly for reading and was successful. Trial Tr. 315. At that time the child was in a private school. Trial Tr. 166. The child was later moved to the public school system. Trial Tr. 166-167. The transition was somewhat hard on the child and the child's grades began to fall. Trial Tr. 167. The child's mother sought out Appellant to tutor the child again. Trial Tr. 168-169. Tutoring this time was mostly in math. Trial Tr. 175. During the tutoring sessions, which only lasted about a week, Appellant used discipline if the child got an answer wrong; Appellant described his technique as a fear induced learning environment. Trial Tr. 174, 201, 320. According to Appellant the child could not add three digit numbers and was having trouble carrying the numbers. Trial Tr. 325. To instill fear in the child to follow his instructions, Appellant took the child to the basement and hit him with a paddle/plank of wood on the child's clothed buttocks. Trial Tr. 201-202, 253, 324. This happened five times in one session. Trial Tr. 326. Appellant described it "like an exorcism" to get the victim to carry the number; Appellant did not want to hurt the child he just wanted to get him to refocus. Trial Tr. 325, 328.

{¶ 4} On October 12, 2014, after one of the sessions, the child showed his right buttocks to his aunt. Trial Tr. 178, 214. On that buttock was a crescent shaped abrasion about 6 cm by 1 cm. Trial Tr. 255. The child told the aunt Appellant hit him with a board and it hurt to sit. Trial Tr. 216. The aunt took a picture of the abrasion and sent it in a text message to the mother explaining the child indicated Appellant hit him. Trial Tr. 178, 217. The next morning, the mother took the child to the pediatrician and the pediatrician referred them to the Child Advocacy Center (CAC). Trial Tr. 182. Dr. Melville, from the CAC, interviewed and examined the child. Trial Tr. 183. At the follow-up visit two weeks later the mark was still very visible on the child's buttock. Trial Tr. 183, 256-257. Dr. Melville in his report indicated this case was "strongly concerning for physical abuse." State's Exhibit 6. He testified the injury was the result of unreasonable physical discipline. Trial Tr. 261.

{¶ 5} The case was then referred to Youngstown Police Department, Family Investigative Services Unit. Trial Tr. 222. Investigator Rowley, an investigator from that unit, set up a scheduled interview with Appellant; however, Appellant did not appear. Trial Tr. 227.

{¶ 6} Appellant entered a not guilty plea to the indictment and originally choose to represent himself. 1/13/15 Plea; 3/9/15 Pretrial J.E. However, the appointed attorney was ordered to remain as standby counsel. 3/9/15 Pretrial J.E. Appellant, pro se, moved to dismiss the indictment claiming the court did not have jurisdiction over him. 4/24/15 Motion. The motion was denied. 5/6/15 J.E. Following the denial, Appellant chose to have standby counsel represent him. Trial was set for June 1, 2015.

{¶ 7} Prior to the start of trial, the state moved to amend the indictment. The state asked for the second-degree felony child endangering charge to be amended to include language that Appellant "created substantial risk of serious physical harm to" the child. 6/1/15 Motion; Trial Tr. 9-11. It also moved to dismiss one of the third-degree felony child endangering charges. 6/1/15 Motion; Trial Tr. 9-11. The trial court granted the motion, amended the indictment, and dismissed the one charge. Trial Tr. 9-11.

{¶ 8} The jury found Appellant guilty of second-degree felonious assault in violation of R.C. 2903.11(A)(1)(D), second-degree felony child endangering in violation of R.C.

2919.22(B)(3)(E)(1)(3), and third-degree felony child endangering in violation of R.C. 2919.22(A)(E)(1)(2)(c). 6/2/15 Jury Verdicts; 6/5/15 J.E. The parties agreed the offenses were allied offenses of similar import and the verdicts merged. Sentencing Tr. 3. The state elected to have Appellant sentenced on the second-degree felony child endangering verdict. Sentencing Tr. 3. The state recommended a six year sentence; Appellant asked for community control sanctions. Sentencing Tr. 2. The trial court sentenced Appellant to eight years. Sentencing Tr. 13.

(ECF No. 7-2, Exhibit 21); *State v. Henderson,* 7th Dist. App. No. 15 MA 0137, 2018 WL 3428753 (June 29, 2018).

## III.    PROCEDURAL HISTORY

### A.    <u>State Court Conviction</u>

On December 30, 2014, Mr. Henderson was indicted on one count of felonious assault (Count One) and three counts of child endangering (Counts Two, Three, and Four). (ECF No. 7-2, Exhibit 1.) Mr. Henderson, through counsel, pled not guilty on all counts on January 13, 2015. (ECF No. 7-2, Exhibit 2.) Mr. Henderson indicated at his arraignment that he did not want an attorney to represent him. (*Id.*) On March 13, 2015, Mr. Henderson filed an unsigned statement (marked to indicate that Mr. Henderson "refused to sign") that "having been advised of my right to counsel and the obligations and rules regarding representing myself, wish to proceed by representing myself and waive counsel." (*Id.*)

On April 24, 2015, Mr. Henderson filed a pro se motion to dismiss the indictment, premised on the Court's alleged "misinterpret[ation] [of] prior arguments regarding diversity of citizenship and the Respondent's Standing as a North American National." (*Id.,* Exhibit 4.) The trial court denied the motion. (*Id.,* Exhibit 5.)

On June 1, 2015, the State moved to amend Count Three of the indictment to include the language that Mr. Henderson "created a substantial risk of serious physical harm to E.D.," as stated in Count Four, and also moved to dismiss Count Four. (*Id.*, Exhibit 6.)

At trial, the jury heard the testimony of E.D.'s mother (ECF No. 7-3, Trial Tr. Vol. I, PageID

4

# 569-598), E.D. (*id.,* PageID# 598-615), and his aunt (ECF No. 7-4, Trial Tr. Vol. II, PageID# 624-33.) The jury heard testimony from the family regarding E.D.'s injury (*e.g.,* Trial Tr. I, PageID # 582, 586; Trial Tr. II, PageID # 628-30), the pain he sustained (*e.g.* Trial Tr. I, PageID # 606, 609), and that he still bears a scar as a result (*id.,* PageID # 610). E.D. further testified that when he answered a question incorrectly, Mr. Henderson would yell at him, take him down to the basement, and hit him with a fat wooden board. (*Id.,* Page ID # 604-05.) E.D. also testified that no one else hit him at all, much less in any way that could have caused his injury. (*See id.,* PageID # 611.)

E.D.'s mother testified that: (1) she and Mr. Henderson had no written tutoring agreement (Trial Tr. Vol. I, PageID# 590, 596); (2) she never physically disciplined E.D. (*id.,* PageID # 579); (3) Mr. Henderson never suggested to E.D.'s mother that he would use physical discipline on E.D. or asked her permission to do so (*id.,* Page ID # 579-80); (4) she never would have allowed him to do so (*id.,* Page ID # 580); and (5) Mr. Henderson acknowledged to E.D.'s mother that he hit E.D. (*id.,* PageID # 584).

Additionally, the State called Dr. John Melville to testify as an expert witness.[3] (Trial Tr. Vol. II, PageID # 653-77). Dr. Melville works at Akron Children's Hospital in the Child Advocacy Center ("CAC") (Trial Tr. Vol. II, PageID # 654) and serves as CAC's site director (*id.* at PageID # 658.) Dr. Melville is Board-certified in general pediatrics, general internal medicine, and child abuse pediatrics. (*Id.* at PageID # 655, 677.) He is a contributor to a textbook used to train other doctors in the field of child abuse pediatrics. (*Id.,* PageID # 655) Dr. Melville's entire professional career is devoted not only to pediatrics, but to child abuse pediatrics; he has evaluated over 400 children in suspected abuse cases (*id.* at PageID # 657) and is trained in forensic interviewing (*id.,* PageID # 660.)

Based on a referral from E.D.'s primary care physician, Dr. Melville examined E.D. on

---

[3] While Mr. Henderson contends his traverse that Dr. Melville has a developmental disability (ECF No. 22-1, PageID # 1078), Dr. Melville in fact explained to the jury at the outset of his testimony that he has cerebral palsy, which has no effect on his mental process. (Trial Tr. Vol. II, PageID # 654.)

October 14, 2015. (*Id.* at PageID # 665.) Dr. Melville testified that E.D. had a "good sized abrasion" of approximately six centimeters on his right buttock. (*Id.* at PageID # 667.) Dr. Melville further testified that E.D. told him that Mr. Henderson hit him with a "plank of wood" (*id.,* PageID # 665), and E.D. did not indicate to Dr. Melville that anyone else had hit him (*id.,* PageID # 671-72.) The State further elicited testimony from Dr. Melville that a technical report by the American Academy of Pediatrics concluded that, if physical discipline is to be employed, reasonable physical discipline "is using a hand to the buttocks and that it not leave any marks that persist for more than four or five minutes." (*Id.* at PageID # 672.) Dr. Melville further stated that: "anything more than that, using anything but a hand striking anywhere but the buttocks or leaving a mark that lasts more than five to ten minutes, is inappropriate physical discipline." (*Id.* at PageID # 673.) The State then asked Dr. Melville: "Based upon the injury that you observed in this case, would you characterize [E.D.'s] injury as the result of unreasonable physical discipline?" (*Id.*) Dr. Melville responded: "Yes, I would." (*Id.*)

Mr. Henderson's trial counsel made no objection to Dr. Melville's qualifications to serve as an expert prior to or during trial, nor did he object at trial to any of Dr. Melville's testimony.

The State further sought to admit into evidence a photograph taken by E.D.'s aunt the night she learned of his injury, as well as four photographs taken by Dr. Melville in the course of his physical examination of E.D. (*Id.*, PageID # 678.) Mr. Henderson's trial counsel objected, arguing that the photographs were unduly prejudicial. (*Id.,* PageID # 679.) In response, the State maintained that the photographs were extremely probative because "the entire issue in this case is did physical harm result, was the physical discipline administered too excessive," and thus "to deprive the jury the opportunity to actually see that injury is I think unfair." (*Id.*, PageID # 680.) The trial court agreed, finding that the probative value of the photographs substantially outweighed their prejudicial effect. (*Id.*)

Mr. Henderson also testified in the defense's case in chief. (*Id.,* PageID # 718-41.) Mr. Henderson characterized his teaching philosophy as a "fear-induced learning environment" (*id.,* PageID

6

# 732), though he acknowledged - consistent with the testimony of E.D.'s mother and aunt - that E.D.

"is not a behavioral problem" (*id.*, PageID # 734.) Mr. Henderson testified that "most kids are scared to go down into a basement," so he instructed E.D. to go into the basement five different times during a single tutoring session to "scare him." (*id.,* PageID # 736-38.) Mr. Henderson further testified that during one tutoring session, he hit E.D. five times on his clothed buttocks with a wooden paddle. (*Id.; see also* PageID # 749-50; 765.) Mr. Henderson also testified that he loved E.D. and had no intention of hurting him. (*Id.,* PageID # 741.) The state declined to cross-examine Mr. Henderson. (*Id.*)

During closing arguments, the State explained and then applied the elements of each of the three counts to the facts presented at trial. Significantly, the State argued it had established that Mr. Henderson caused "serious physical harm" to E.D. (*Id.,* PageID # 750-53.) The state acknowledged that two aspects of "serious physical harm" – a mental illness or condition that would require hospitalization or prolonged psychiatric treatment, or a substantial risk of death – were inapplicable in this case. (*Id.,* PageID # 750.) However, the State argued that E.D.'s injuries satisfied the element of "serious physical harm" because E.D. had a large crescent-shaped abrasion on his buttock, that it was difficult for him to sit, that the wound split open, and that he had to keep it bandaged. (*Id.,* PageID # 751.) Additionally, the State argued that E.D. had sustained serious physical harm because he has permanent disfigurement (*i.e.*, he still has a scar on his buttocks) and previously had a temporary serious disfigurement (*i.e.*, a large seeping abrasion on his buttock). (*Id.,* PageID # 751-53.)

The State also argued that "if there is any reasonable doubt left for you … the defendant cleared that up for you when he took the stand and told you I hit him five times with a wooden paddle. I did do that." (*Id.,* PageID # 765.) The State further noted that:

> The defendant, himself, give some testimony that really the state didn't anticipate. We didn't talk to you in voir dire or in opening statement about there being a confession in this case. However, we got one. The defendant took the stand in his own defense, and he acknowledged that he was hitting this little boy. …He takes [E.D.] down in the basement not once, not twice, not three times, not even four times, but five times and hits him with the wooden paddle, bends

7

him over and hits him on the behind.

(*Id.,* PageID #  766-68.)

Mr. Henderson's trial counsel acknowledged in his closing argument that E.D.'s injury likely happened on Thursday, October 9, 2015, then implicitly questioned why E.D. continued to go to tutoring for the following three days.  (*Id.,* PageID # 771.)  Trial counsel then disputed the state's characterization of E.D.'s injury as "large," pointing out that Dr. Melville testified it was about six centimeters. (*Id.*)  Mr. Henderson's trial counsel also told the jury that they had an opportunity to hear from Mr. Henderson regarding his teaching methods, that he is honest, and that he is a dedicated and effective teacher and educator.  (*Id.* at PageID # 772.)  Trial counsel also argued that E.D.'s injuries were caused by a "spanking" – not a "beating" – and that Mr. Henderson admitted he had done it.  (*Id.*)  Finally, trial counsel argued that Mr. Henderson loved E.D. and did not intend to harm him.  (*Id.*)

In closing argument rebuttal, the State said that the jury needed to look at the pictures in evidence and decide for themselves whether E.D.'s injuries constituted serious physical harm or a substantial risk of harm.  (*Id.* at PageID # 773.)  The State then concluded:

> Whether defendant in his mind thought that these were appropriate teaching methods may be something for you to think about.  But, again, he is held to the law.  Whether he thinks this was appropriate, whether he thinks physically disciplining a child to the point that you can leave marks and abrasions on the child, whether he thinks that's appropriate or not is not the linchpin here.  It's what you think.  It's whether you think that this fits the elements of felonious assault and child endangering, and I submit to you that it does, and this is excessive.  This is a child. This is a significant injury, and we ask you to find the defendant guilty.

(*Id.* at PageID # 774-75.)

At the conclusion of the trial, the jury found Mr. Henderson guilty on all three counts as set forth in the amended indictment, *i.e.,* one count of felonious assault and two counts of felony child endangering.  (ECF No. 7-2, Exhibit 7.) The jury also completed an additional verdict form as to Count Three, wherein the jury found that the State "prove[d] beyond a reasonable doubt that the offense of endangering children, a violation of ORC 2929.22(B)(3)(E)(1)(3) resulted in serious physical harm" to

E.D.  (*Id.*)

At the sentencing hearing on July 24, 2015, the trial court recognized that Counts One and Two merged for purpose of sentencing, and then imposed the maximum eight-year term of imprisonment on Count Three.  The trial court found, based upon a review of the record that a maximum sentence "is necessary due to the seriousness of the offense, the likelihood of recidivism, and the lack of remorse." (*Id.*, Exhibit 10.)

**B.    Direct Appeal**

Mr. Henderson, through counsel, filed an appeal of his conviction to the Seventh District Court of Appeals in Mahoning County.  (*Id.,* Exhibit 11.)  On June 9, 2015, the Ohio appellate court dismissed the appeal for lack of prosecution because an appellate brief was more than seven months overdue. (*Id.,* Exhibit 12.)  Mr. Henderson, through counsel, filed a motion for reconsideration based on a clerical error.  (*Id.,* Exhibit 13.)  The Ohio Court of Appeals reinstated the appeal and gave Mr. Henderson's counsel 14 days to file a brief.  (*Id.,* Exhibit 14.)

On July 11, 2016, appointed appellate counsel for Mr. Henderson filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), stating that counsel reviewed "the original court file, as well as the transcripts of proceedings prepared in this case, and can find no error by the trial court prejudicial to the rights of Mr. Henderson which may be argued on appeal." (*Id.,* Exhibit 15.) Appellate counsel then requested that the Ohio appellate court independently review the transcript of proceedings to determine whether any possible error exists.  (*Id.*)  Specifically, counsel asked the Ohio appellate court to determine whether the trial court erred by not *sua sponte* ordering an examination of Mr. Henderson to determine if he was competent to stand trial.  (*Id.*)  Appellate counsel concluded by stating:

> There is nothing to appeal in this case.  The defendant appears to be factually guilty; the statute pursuant to which he was convicted is constitutional; the jury verdict of guilty was properly rendered; and the sentence imposed was well within the appropriate discretion of the trial court.

(*Id.*)

9

The State filed a motion for an extension of time in the event Mr. Henderson filed any pro se assignments of error, or if the court determined that there were non-frivolous issues to review. (*Id.,* Exhibit 16.) On July 25, 2016, the appeals court granted the motion for extension in the event Mr. Henderson filed any pro se assignments of error, or if the court determined that there were non-frivolous issues to review. (*Id.,* Exhibit 17.)

On May 23, 2017, Mr. Henderson – through different appellate counsel – filed a brief that set forth the following assignments of error:

1. The trial court erred in denying Ericulo Henderson's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of child endangering, including the merged child-endangering and felonious-assault findings of guilt. Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. R.C. 2919.22; R.C. 2903.11. Trial Tr. 167, 177, 189, 193, 201-202, 204-205, 254-261, 273, 322-329; State's Exhibits 1-6; July 24, 2015 Judgment Entry of Sentence.

   Issue Presented for Review:

   (1) Does paddling a clothed young man create a substantial risk of serious physical harm?

   (2) Does the equivalent of a scraped knee constitute serious physical harm?

2. The trial court erred and violated Ericulo Henderson's rights to due process and a fair trial when it, against the weight of the evidence, convicted him of child endangering, including the merged child endangering and felonious-assault findings of guilt. Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. R.C. 2919.22; R.C. 2903.11. Trial Tr. 167, 177, 189, 193, 201-202, 204-205, 254-261, 273, 322-329; State's Exhibits 1-6; July 24, 2015 Judgment Entry of Sentence.

   Issue Presented for Review:

   Is Mr. Henderson's child-endangering conviction, including the merged child-endangering and felonious assault findings of guilt a manifest miscarriage of justice?

3. Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to move the court to reduce the felony findings of guilt to misdemeanor findings of guilt through Crim.R. 33(A)(4). Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. Crim.R.33 Sentencing Tr. 7-9.

Issue Presented for Review:

Is counsel constitutionally ineffective for failing to request a court to reduce felony findings of guilt based upon insufficient evidence to misdemeanor findings of guilt through a timely Crim.R. 33(A)(4) motion?

4.  Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to object to the admission of improper and prejudicial expert opinion testimony. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. Evid.R. 702; Evid.R. 403. Trial Tr. 260-261.

Issue Presented for Review:

Is counsel constitutionally ineffective for failing to object to the elicitation and admission of expert opinion testimony on an ultimate issue of fact that was not beyond the ken of the ordinary person?

5.  Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to request jury instructions on lesser-included offenses. Fifth, Sixth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.  Trial Tr. 364-383.

Issue Presented for Review:

 Is counsel constitutionally ineffective for failing to request jury instructions on lesser-included offenses when the evidence is sufficient only to prove those lesser offenses?

6.  Prosecutorial misconduct deprived Ericulo Henderson of his right to a fair trial and due process. Fifth, Sixth, and Fourteen Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. Evid.R. 702; Evid.R. 403. Trial Tr. 260-261.

Issue Presented for Review:

May a prosecutor elicit expert opinion testimony on an ultimate issue of fact that was not beyond the ken of the ordinary person?

7.  The trial court committed plain error when it permitted expert opinion testimony on an ultimate issue of fact that was not beyond the ken of the ordinary person. Evid.R. 702; Evid.R. 403. Crim.R. 52(B). Trial Tr. 260-261.

Issue Presented for Review: Is it plain error to admit expert opinion testimony on an ultimate issue of fact that is not beyond the ken of the ordinary person?

8.  The trial court committed plain error when it failed to instruct the jury on the lesser-

included offenses of misdemeanor child endangering under R.C.2919.22(A) and (C)(1). Fifth and Fourteenth Amendments, United States Constitution, Sections 10 and 16, Article I, Ohio Constitution. R.C. 2919.22; R.C. 2903.13. Crim.R. 52(B). Trial Tr. 364-383.

Issue Presented for Review:

Does a trial court commit plain error when the evidence proves only misdemeanor child-endangering and assault offenses beyond a reasonable doubt but the court fails to provide jury instructions on those offenses?

9.  Ericulo Henderson's sentence is not supported by competent, credible evidence in the record. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. R.C. 2953.08; R.C. 2929.11. Sentencing Tr. 10-18; July 24, 2015 Judgment Entry Sentence.

Issue Presented for Review:

Is a maximum sentence contrary to law and not supported by competent, credible evidence in the record when it is incompatible with purposes and principles of felony sentencing and disproportionate both to the offender's conduct and to sentences imposed upon other offenders for comparable conduct?

(*Id.,* Exhibit 18.)  The state filed a brief in opposition (*id.,* Exhibit 19), and Mr. Henderson – through counsel – filed a reply. (*Id.,* Exhibit 20.)  On June 29, 2018, the Ohio Court of Appeals affirmed the the trial court's judgment in a 32-page opinion.  (*Id.,* Exhibit 21); *State v. Henderson,* 7th Dist. No. 15 MA 0137, 2018 WL 3428753 (June 29, 2018).

Mr. Henderson, through his appellate counsel, filed an appeal to the Ohio Supreme Court. (*Id.,* Exhibit 22.)  In his memorandum in support of jurisdiction, Mr. Henderson asserted the following propositions of law:

1.  Trial counsel erred to the prejudice of Appellant, and was deficient for failing to assure that the indictment adequately set forth the requirements for alleging in loco parentis status.

2.  Trial counsel erred to the prejudice of the Appellant by failing to provide proper Jury Instructions on teacher immunity alleging "in loco parentis" status, in the indictment.

3.  Defendant-Appellant asserts that his conviction was not supported by sufficient evidence and/or against the manifest weight of the evidence in light of his claim that his actions constituted reasonable parental (in loco parentis) discipline under the circumstances.

12

The State waived a memorandum in response. (*Id.,* Exhibit 24.) On October 10, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal, pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id.,* Exhibit 25.)

### C.       Application for Reconsideration – App. R. 26(A)

On July 16, 2018, Mr. Henderson filed an application for reconsideration of his appeal in the Ohio Court of Appeals regarding the ninth assignment of error (his sentence), pursuant to App. R. 26(A)(1). (*Id.,* Exhibit 26.) The State filed a response (*id.,* Exhibit 27), and Mr. Henderson filed a reply (*id.,* Exhibit 28.) On August 21, 2018, the Court of Appeals denied Mr. Henderson's application for reconsideration based on its finding that: "Defendant simply disagrees with this Court's analysis and merely recites his earlier argument set forth in his motion before the trial court and his merit brief before this Court." (*Id.*, Exhibit 29, PageID# 331); *State v. Henderson,* 7th Dist. No. 15 MA 0137, 2018 WL 4057046 (Aug. 18, 2018).

### D.       Application to Reopen Appeal – App. R. 26(B)

Mr. Henderson, pro se, filed an application to reopen his appeal on September 24, 2018. (*Id.,* Exhibit 30.) Mr. Henderson claimed ineffective assistance of appellate counsel when appellate counsel failed to raise the following assignments of error:

1.  Appellate Counsel was Ineffective for failing to raise that the indictment did not adequately set forth the requirements for alleging in loco parentis status.

2.  Appellate Counsel failed to present for review that Trial counsel erred to the prejudice of the Appellant by failing to provide proper Jury Instructions on teacher immunity alleging "in loco parentis" status, in the indictment.

3.  Defendant-Appellant asserts that his conviction was not supported by sufficient evidence and/or against the manifest weight of the evidence in light of his claim that his actions constituted reasonable parental (in loco parentis) discipline under the circumstances.

On November 30, 2018, the Ohio appellate court denied Mr. Henderson's application to re-open. (*Id.,* Exhibit 31); *State v. Henderson,* 7th Dist. No. MA 0137, 2018 WL 6707862 (Nov. 30,

2018).  Mr. Henderson appealed this ruling to the Ohio Supreme Court under Case No. 18-1828 (ECF

No. 7-2, Exhibit 32), asserting the following propositions of law:

1. Appellate Counsel was Ineffective for failing to raise that the indictment did not adequately set forth the requirements for alleging in loco parentis status.

2. Appellate Counsel failed to present for review that Trial counsel erred to the prejudice of the Appellant by failing to provide proper Jury Instructions on teacher immunity alleging "in loco parentis" status, in the indictment.

3. Defendant-Appellant asserts that his conviction was not supported by sufficient evidence and/or against the manifest weight of the evidence in light of his claim that his actions constituted reasonable parental (in loco parentis) discipline under the circumstances.

On March 20, 2019, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.,* Exhibit

34.)

### E.       Motion to Correct a Void Judgment

While not in the record provided to the Court, the State points out in its answer that Mr.

Henderson filed a motion to correct a void judgment.  (ECF No. 7, PageID # 42.)  A review of the Ohio

Appeals Court for the Seventh District affirming the denial of this motion states that Mr. Henderson

filed a single assignment of error in support of this motion:

When the trial court fails to impose sentence for each charge, that order is merely interlocutory because the trial court has a mandatory duty "to deal with each and every charge prosecuted against a defendant.

*State v. Henderson,* 7th Dist. App. No. MA 0090, 2020 WL 2950533, at *1 (May 29, 2020) .  The

Seventh District Court of Appeals recognized that:

For purposes of merger, the state chooses which of the allied offenses to pursue at sentencing. *State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 62, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 16, 43. Once the state elects which offense it wishes the court to sentence the defendant on, the court must accept the state's choice and merge the crimes into a single conviction for sentencing purposes. *Id.*, citing *Brown* at ¶ 42.

*Id.* at *2, ¶ 15. Thus, the Ohio appellate court concluded that "the trial court properly sentenced

appellant on one conviction after it found that the other two merged for sentencing purposes." *Id.*

Mr. Henderson then filed another application for reconsideration of the appellate court's ruling. *State v. Henderson,* 7th Dist. No. MA 0090, 2020 WL 7641305, at *1 (Dec. 23, 2020). The Ohio appellate court denied the appeal, concluding that:

> In his application for reconsideration, appellant simply disagrees with the conclusions reached by this court. He also raises additional arguments as to merger, which are barred by the doctrine of res judicata as they should have been raised in his direct appeal. *State v. Amos*, 7th Dist. Belmont No. 19 BE 0003, 2019-Ohio-3651.

*Id.* ¶ 9.

### F.     **Habeas Petition**

Mr. Henderson's habeas petition raises the following six grounds for relief[4]:

**GROUND ONE:** A single abrasion does not constitute serious physical harm, 5th and 14th Amendments, United States constitution, article 1 section 10 and 16, Ohio constitution, and that evidence is insufficient to convict petitioner.

**Supporting Facts:** The alleged injury cause under private performance contract by Mr. Henderson's sequential paddling of a fully clothed, 11-year-old student purportedly a 6cm by 0.5 cm abrasion, (0.93 inches square) was not serious physical harm and as described was not explainable or within any age-date-able-time frame, for nexus.

**GROUND TWO**: The Sentence of Henderson (void ab initio and contrary to law, as the practice of corporal discipline punishment pedagogical was authorized and limited by common law) can be modified by or vacated by a superior court that is not clearly and convincingly supported by the Record. 5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

Supporting Facts: An appellate court may modify a felony sentence that is not clearly and convincingly supported by the records. 5th, 6th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

**GROUND THREE:** Expert testimony declaring a corporal punishment event as excessive, when that determination constitutes an element of an offense is improper, 5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

 **Supporting Facts**: An expert's uncorroborated testimony "assist[s] the trier," only if it relates to matters "beyond the ken" of the ordinary person. The jury was required to determine, if Mr.

---

[4] Mr. Henderson's grounds for habeas relief asserted in his petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

Henderson's sequential paddling under private performance contract was excessive. Expert opinion testimony without medical jurisprudence on excessiveness, is improper, prejudicial and absurd in this instance.

**GROUND FOUR:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to assure that the indictment adequately set forth the requirements for alleging "in loco parentis" with an affirmative defense of justifiable immunity.

**Supporting Facts**: The indictment on its face does not comply with any associated logical criminal/tort schema required of Ohio state, Ohio Supreme Court or federal, U.S. Supreme Court precedence.

**GROUND FIVE:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to provide proper jury instructions on teacher qualified justifiable immunity alleging "in loco parentis" status, in the indictment.

**Supporting Facts:** An affirmative defense status/jurisdiction could have or should have been instructed to the jury. A preliminary re-creation, due process inclusive of associated logical criminal/tort schema.

**GROUND SIX:** Petitioner asserts that his conviction was not supported by sufficient evidence in light of his claim that his status constituted reasonable parental-pedagogical actions discipline under the ("in loco parentis") circumstances.

**Supporting Facts:** The allocation conflict of proving the unlawfulness or parental discipline is currently before the Ohio Supreme Court upon determination that a jurisdictional conflict exists, prejudicing the Petitioner, who was denied due process to disprove the element of the alleged offenses. The lone Ohio Supreme Court case allocates the burden of proving the unlawfulness of parental discipline on the state, as an element of the offense. The unique nature of the parent/child relationship of "in loco parentis," status/jurisdiction/private contract, including the parent's right to discipline the child, including the use of corporal punishment underscores the importance of clarifying the law in the 7th District Court of Appeals.

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.    <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted

16

and sentenced him[.]" 28 U.S.C. § 2241(d). The Mahoning Court of Common Pleas of sentenced Mr. Henderson, and the Court takes judicial notice Mahoning County is within this Court's geographic jurisdiction. Moreover, as discussed earlier in this Report and Recommendation, Mr. Henderson's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth*., 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).Accordingly, this Court has jurisdiction over Mr. Henderson's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule

that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. <u>Cognizable Federal Claim</u>

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007)

(citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.    AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through'

them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*,

546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet... because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.    ANALYSIS

### A. <u>Ground One: Sufficiency of the Evidence</u>

Mr. Henderson, pro se, contends in his petition that his convictions are not supported by sufficient evidence because "a single abrasion does not constitute serious physical harm, 5th and 14th Amendments, United States constitution, article 1,section 10 and 16, Ohio constitution." Mr. Henderson further argues that his conviction was "not explainable or within any age-date-able-time frame, for nexus." (ECF No. 1, PageID # 6.)

In response, the Warden argues that this Court should deny Mr. Henderson's Ground One claim because it is either: (1) not reviewable because the sole question is the application of Ohio substantive law regarding the elements of the offense to uncontested facts; or (2) meritless under the doubly deferential standard of review.  (ECF No. 7, PageID # 23-24).  For the reasons set forth below, the Warden's arguments are well-taken.

In his 256-page traverse, Mr. Henderson devotes 28 pages of argument in support of his

Ground One claim, including challenges to Dr. Melville's testimony (*see, e.g.,* ECF No. 22-1, PageID # 34, *see also* ) and an apparent vagueness/overbreadth challenge (*id.,* PageID # 1029-1033). Mr. Henderson's challenge to expert testimony will be addressed later in this Report and Recommendation in the analysis of his Ground Three claim. Mr. Henderson, however, never raised a vagueness/overbreadth argument on direct appeal. "A court cannot consider new issues raised in a traverse or reply to the State's Answer." *Burns v. Lafler,* 328 F.Supp.2d 711, 724 (E.D. Mich 2004); *see also McClendon v. Wainwright*, No. 1:17 CV 0589, 2018 WL 7982929, at \*3 (N.D. Ohio Nov. 13, 2018), *report and recommendation adopted*, No. 1:17 CV 589, 2019 WL 1558739 (N.D. Ohio Apr. 10, 2019). Thus, this Report and Recommendation cannot address this entirely new argument asserted for the first time in Mr. Henderson's traverse.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The Sixth Circuit has recognized that, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

> **First**, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. **Second**, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steel,* 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (emphasis added)). Significantly, under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable

hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

On direct appeal, the state appellate court reasonably rejected Mr. Henderson's argument that there was insufficient evidence to support his convictions, setting forth its reasoning as follows:

> "The trial court erred in denying Ericulo Henderson's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of child endangering, including the merged child-endangering and felonious-assault findings of guilt."

> {¶ 10} A claim of insufficient evidence invokes a due process concern and raises the question as to whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), syllabus. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993) (sufficiency of the evidence claim viewed in the light most favorable to the prosecution). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

> {¶ 11} The jury found Appellant guilty of second-degree felonious assault, second-degree felony child endangering, and third-degree felony child endangering. The portion of the felonious assault statute he was found guilty of violating states:

> > (A) No person shall knowingly do either of the following:

> > (1) Cause serious physical harm to another or to another's unborn;

> > (D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree.

> R.C. 2903.11(A)(1)(D).

> {¶ 12} Appellant was found guilty of second-degree felony child endangering defined as:

> > (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

\* \* \*

(3)  Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;

\* \* \*

(E)(1) Whoever violates this section is guilty of endangering children.

\* \* \*

(3) If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree. If the violation results in serious physical harm to the child involved, or if the offender previously has been convicted of an offense under this section or of any offense involving neglect, abandonment, contributing to the delinquency of, or physical abuse of a child, endangering children is a felony of the second degree.

R.C. 2919.22(B)(3)(E)(1)(3).

{¶ 13} Appellant was found to have caused serious physical harm under this statute.

{¶ 14} Appellant was also found guilty of third-degree felony child endangering as defined as:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

\* \* \*

(E)(1) Whoever violates this section is guilty of endangering children. (2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies: \* \* \*

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree.

R.C. 2919.22(A)(E)(1)(2)(c).

{¶ 15} The felonious assault and both child endangering crimes have a common element – to have caused serious physical harm. Second degree felony child endangering also requires

a substantial risk of serious physical harm and excessive corporal punishment. These are the elements Appellant focuses on in this assignment of error. He asserts the paddling was not excessive. He contends there was no evidence that paddling a fully clothed child created a substantial risk of serious physical harm. He also argues the abrasion on the victim's buttocks does not amount to serious physical harm.

{¶ 16} The analysis begins with whether there was sufficient evidence produced by the state to show the administration of corporal punishment was excessive under the circumstances. This is an element of the second-degree felony child endangering crime.

{¶ 17} It is undisputed in this case that the injury was caused by the administering of a paddle board on the victim's clothed buttocks. The victim confirmed this admission.

{¶ 18} We have previously stated that in corporal discipline cases, the state must prove the corporal discipline was improper in light of all of the surrounding facts and circumstances. *State v. Rosa*, 7th Dist. No. 12 MA 60, 2013-Ohio-5867, 6 N.E.3d 57, ¶ 41. The factors to be considered are: "(1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." *Id.*, quoting *State v. Luke*, 3d Dist. No. 14-10-26, 2011-Ohio-4330, ¶ 23; *State v. Hart*, 110 Ohio App.3d 250, 255–56, 673 N.E.2d 992 (3d Dist.1996) ("The propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances.").

{¶ 19} In the case at hand, the victim was 11 years old. The victim was not correctly completing a math problem and this led to the paddling; Appellant admitted the victim was not a behavioral problem. Trial Tr. 322, 324. Appellant testified he used fear and discipline to get his students to focus. Trial Tr. 320. Appellant testified he gave the victim the opportunity to get the math problems correct, but the victim would not carry the digit correctly and kept getting the problems wrong. Trial Tr. 325. Testimony indicated Appellant yelled and scared his students prior to paddling them. Trial Tr. 284; 320. It is undisputed the victim was paddled on his clothed buttocks five times during one tutoring session. Trial Tr. 326. The victim's aunt, who was the first person the victim showed the injury, described it as follows:

> It was – his skin was reddish and purplish and it had a scab. You could see like the where the pores of his skin was so open that they were bleeding, you know, it was bleeding out, and it was like holes. You could actually see holes in it. And I asked him, I said, does it hurt? He said, yes, it hurts to sit and everything. So I put gauze, and I put Neosporin on it, and I bandaged it up and tried to cushion it as much as possible. But I had to – I sent a text to his mom and showed her the picture.

Trial Tr. 216.

{¶ 20} Dr. John Melville from the CAC testified at trial. Trial Tr. 241-242. He saw the victim the day after the injury was shown to the aunt. He described the injury as a crescent shaped abrasion about 6cm by 1cm. Trial Tr. 255. It was dark red and there was evidence of some

healing. Trial Tr. 255. At the two week follow up visit there was evidence of healing, but the injury was not gone. Trial Tr. 256-257. After one month of healing, the doctor testified there was further healing but the mark was still present. Trial Tr. 257. Pictures taken at the CAC were admitted into evidence. Trial Tr. 254; State's Exhibit 2-5.

{¶ 21} Appellant testified he did not want to hurt the victim. Trial Tr. 328. He explained he taught in a fear induced learning environment. Trial Tr. 320. He stated it was "like an exorcism" to get the victim to carry the number correctly in doing a three digit math problem. Trial Tr. 325.

{¶ 22} Considering these facts in the light most favorable to the prosecution the punishment was improper and excessive.

{¶ 23} As to the felonious assault and third-degree felony child endangering convictions, the question is whether there was serious physical harm to the child. As there was sufficient evidence of excessive corporal punishment, the analysis for the second-degree felony child endangering conviction is whether there was a substantial risk of serious physical harm to the child.

{¶ 24} "Serious physical harm to persons" is defined as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 25} "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 26} Appellant cites this court to a case where the appellate court found there was not sufficient evidence of serious physical harm or substantial risk of serious physical harm. He contends the cases cited by him are examples of worse conduct by an offender and the appellate court found there was not sufficient evidence of the crimes. Three of the cases - Ivey, Wright, and Enovitch - are from the Eighth Appellate District and are from the mid to late 1990s. In Ivey, the child had welts and bruises on his buttocks and legs from being beat

with a belt for disciplinary reasons. *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (8th Dist.1994). In reversing the conviction, the Eighth Appellate District court stated:

> Although the punishment may have been excessive, the state produced no evidence that the bruises and welts caused by the strapping resulted in serious physical harm or created a substantial risk of serious physical harm. On the contrary, the evidence showed the boy went to school, without incident, the next day. There was no evidence he was in great pain or that he had trouble sitting or walking. The treating physician did not find it necessary to hospitalize the boy, order any type of pain killer (even aspirin), or to schedule another medical exam to check on his progress.
>
> The evidence presented in the record shows the injuries sustained by the child were the result of the imposition of corporal punishment by a father who judged his son's school conduct and acts of deception warranted a strong physical disciplinary response. The state failed to prove by sufficient evidence that this type of whipping resulted in serious physical harm or could result in a substantial risk of serious physical harm to the child.

*Id.* at 524.

{¶ 27} Similarly in the other two Eighth Appellate District cases the court found there was not sufficient evidence of serious physical harm. *City of Shaker Hts. v. Wright*, 8th Dist. No. 69517, 1996 WL 355309 (June 27, 1996); *State v. Enovitch*, 8th Dist. No. 72827, 1998 WL 518163 (Aug. 20, 1998). Wright was a child endangering case and in that case the court explained:

> This conclusion, that the element of seriousness was lacking, is buttressed by the following: (1) the marks were small and were receding over time; (2) the emergency room physician testified that he thought that there was no scarring at the site of the marks and did not feel there had been any abuse; (3) the emergency room report identified the marks as bruises or contusions, not scars; (4) while the injury site was sore the evening it was inflicted, the injury did not prevent the boy from sleeping and the victim experienced no pain at the site of the injury the morning after the injury was inflicted and thereafter enjoyed his normal activities without pain or difficulty; (5) the injury required no follow-up medical care or physical therapy; and, (6) the treating physician did not hospitalize the boy. Accordingly, the City failed to prove by sufficient evidence that this type of whipping resulted in serious physical harm or could result in a substantial risk of serious physical harm to the child.

*Wright*, 8th Dist. No. 69517.

{¶ 28} *Enovitch* was a felonious assault case and in that case the court explained:

> Other than Gartman's statement, there was no evidence at trial that the scar above his eye was permanent. There is no evidence as to who told him the scar would not go away or that the person was qualified to make such a determination. The hospital

27

records described his injury as just over 1.5 centimeters in length and as a "burst-type injury, clean, shallow, not particularly jagged." The hospital discharge instructions characterized the injury as "minor." Based upon the evidence presented, we conclude that Gartman's injury did not constitute the serious physical harm required for a felonious assault conviction. Accordingly, Enovitch's second assignment of error is well taken.

*Enovitch*, 8th Dist. No. 72827.

{¶ 29} Appellant also cites *In re L.J.*, 176 Ohio App.3d 186, 2008-Ohio-1488, 891 N.E.2d 778 (3d Dist.). In that case, the appellate court found the trial court erred as a matter of law when it concluded the child was "abused" under R.C. 2151.031(C) because of corporal punishment. Id. at ¶ 45. The appellate court explained the evidence was insufficient to show the corporal punishment was excessive and to show that it created a substantial risk of serious physical harm:

> While we certainly share the trial court's sentiment that striking a child with a belt on back of the legs supports a finding that the punishment was excessive, this court has stated that corporal punishment on parts of the body other than the buttocks may be proper and reasonable. Hart, 110 Ohio App.3d at 255, 673 N.E.2d 992. In addition, Skinner testified that she had intended to strike J.L. on the butt; however, J.L. moved, which is why she missed. As to the severity, the marks were red but also appeared to be fading and healing within three to four days after the incident, which indicates that the discipline may not have been excessive. Skinner also testified that she did not observe bruises on J.L. after the incident. The record lacks any medical evidence, which would lead one to conclude that the discipline was excessive. No physician testified at the hearing, nor was any medical report admitted into evidence showing that J.L. required medical attention as a result of the discipline. In fact, on the day the caseworker discovered the bruises, J.L. was outside playing with his brother.

* * *

> We also cannot conclude that the punishment created a substantial risk of serious physical harm as those terms are defined. The evidence presented consisted of Core's testimony and the photographs, which, for the most part, revealed that J.L. was bruised. Our review of the admitted photographic evidence confirms that J.L. was bruised, but bruising alone is not sufficient to constitute serious physical harm. In re Schuerman, 74 Ohio App.3d at 532, 599 N.E.2d 728 (trial court could reasonably infer that severe bruising on the buttocks, thighs, and ankles from punishment that was inflicted multiple times for the same misbehavior with a wooden paddle or belt on an eight-year-old girl created a substantial risk of serious physical harm). Other courts have found that punishment much more severe than J.L.'s did not constitute serious physical harm. See, e.g., Ivey, 98 Ohio App.3d at 255–256, 648 N.E.2d 519 (bruised left eyelid, bruises, welts, and lacerations caused by a belt whipping on the buttocks and lower legs and a swollen hand was not "serious physical harm"). Again, notably missing from the record is any medical evidence or reports to show that J.L.'s injuries amounted to serious physical harm. On the basis of this record, we cannot

28

conclude that the corporal punishment caused a substantial risk of serious physical harm.

*Id.* at ¶ 41, 44.

{¶ 30} Appellant also cites a biting case where the parents used biting as a means to punish a nine year old child who bit his brother. In re Miles, 9th Dist. No. 01CA0054, 2002-Ohio-2438. In finding insufficient evidence of serious physical harm, the appellate court explained:

> Additionally, appellee argues that the bruising is an indication of serious physical harm. In this case, the alleged serious physical harm was "any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." See R.C. 2901.01(A)(5)(e). However, the record does not contain any evidence that acute pain resulted of any lasting duration to result in substantial suffering, or that it lasted for an extended period of time or was intractable.

> Although this act may be inappropriate and unwarranted, it did not rise to the level of being an offense of child abuse.

*Id.* at ¶ 12-13.

{¶ 31} These cases are distinguishable from the case at hand; in this case there is evidence of treatment, pain caused from the paddling that lasted over a period of time, and medical testimony from the treating doctor. In all of the cases cited by Appellant the court notes the lack of evidence. However, there is evidence in this case.

{¶ 32} The victim's mother testified it took the wound on the victim's buttocks over two weeks to heal. Trial Tr. 183. The child victim testified it hurt when the Appellant hit him with the paddle board. Trial Tr. 202. As stated above the victim's aunt described the injury as open, bleeding, and scabby. Trial Tr. 216. The victim told her it "hurt to sit and everything." Trial Tr. 216. The picture the aunt took was shown to the jury. Trial Tr. 216; State's Exhibit 1.

{¶ 33} Dr. John Melville from the CAC, whose entire professional career is devoted to child abuse pediatrics, indicated that at a two week follow-up visit, there was evidence of healing but the injury was not gone. Trial Tr. 245, 256-257. After one month of healing, the doctor testified there was further healing but the mark was still present. Trial Tr. 257. Pictures taken at the CAC were admitted into evidence. Trial Tr. 254; State's Exhibit 2-5.

{¶ 34} The doctor was asked what are reasonable physical disciplinary measures. Trial Tr. 260. He explained nobody is opposed to physical discipline in general, but if it is to be administered then it is recommended to be hand to buttocks and that it not leave any marks that would persist for more than 4 to 5 minutes. Trial Tr. 260. Based on what he observed in this case he opined that the victim's injury was the result of unreasonable physical discipline. Trial Tr. 261.

{¶ 35} In determining whether admittedly excessive corporal punishment caused substantial risk of serious physical harm to the child, the Fourth Appellate District has explained:

> "Discipline methods on a child which leave recognizable bruising and cause pain which lasts beyond the time immediately following an altercation between parent and the child may establish a finding of substantial risk of serious harm." *In re Kristen V.*, 6th Dist. Ottawa No. OT–07–031, 2008–Ohio–2994, ¶ 69. Bruising alone, however, is not sufficient to show that the discipline method created a substantial risk of serious physical harm. Schuerman, 74 Ohio App.3d at 532 (stating that "bruising alone is insufficient to establish abuse").

*State v. Neal*, 4th Dist. Nos. 14CA31, 14CA32, 2015-Ohio-5452, ¶ 45.

{¶ 36} Considering the testimony and viewing it in the light most favorable to the state, there was sufficient evidence of serious physical harm and substantial risk of serious physical harm.

{¶ 37} We note the state cites this court to cases upholding child endangering convictions where the victim had extensive bruising on the buttocks, legs and back and where that bruising lasted more than 3 days and up to 7 to 10 days. *State v. Royster*, 2d Dist. No. 25870, 2015-Ohio-3608, ¶ 30-31; *In re Horton*, 10th Dist. No. 03AP-1181, 2004-Ohio-6249, ¶ 27; State v. Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, ¶ 20-23 (12th Dist.); *State v. Burdine-Justice,* 125 Ohio App.3d 707, 714-715, 709 N.E.2d 551 (12th Dist.1998). Admittedly, those cases are different from the case at hand in the type of injury sustained. Also, in some of the cases a belt was used instead of a paddle board. However, the abrasion caused by the paddling lasted over two weeks and there is testimony it caused the victim pain over an extended period of time. Furthermore, as the Twelfth Appellate District stated, "The force necessary to create such bruising must have been great, and was not accidental on the part of the perpetrator. Clearly, this amount of corporal punishment was unnecessary and unwarranted." *Burdine-Justice*, 125 Ohio App.3d at 715. Consequently, although the cases upholding conviction vary from the one before us, the reasoning and the evidence presented in this case indicate they are more akin to the case sub judice than the ones cited by Appellant.

{¶ 38} This court concludes there was sufficient evidence of excessive corporal punishment, serious physical harm, and substantial risk of serious physical harm. This assignment of error is meritless.

(*Id.,* Exhibit 18); *Henderson,* 2018 WL 3428753, ¶¶ 10-37.

Upon careful review of the record, I find that Mr. Henderson's convictions were supported by sufficient evidence. Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, any rational trier of fact could have found the essential elements beyond a reasonable doubt, including but not limited to the following facts set forth by the state appellate court: (1) E.D.'s mother

testified it took the wound on E.D.'s buttocks over two weeks to heal; (2) E.D. testified that it hurt when Mr. Henderson hit him with the board; (3) E.D. aunt described the injury as open, bleeding, and scabby; and (4) E.D. told her it "hurt to sit and everything." (*Id.* at ¶¶ 32.) Moreover, the trial record is clear that the jury saw the pictures of E.D.'s injury and had the opportunity to judge for themselves whether the injury constituted substantial risk of physical harm. And the State in closing arguments told the jury: "Whether [Mr. Henderson] in his mind thought these were appropriate teaching methods is something for you to think about." (ECF No. 7-2, PageID # 774.)

Finally, to the extent that Mr. Henderson (apparently for the first time in his petition) attempts to challenge his conviction based on fact that he did not paddle E.D. during the date range set forth in the indictment (October 4, 2015 – October 12, 2015), I find this argument to be wholly devoid of merit in light of Mr. Henderson's confession at trial that he hit E.D. with a wooden paddle five times on his clothed buttocks during one of the tutoring sessions. (*See, e.g.,* Trial Tr. Vol II, PageID # 736-38; 749-50; 765.) And the trial and appellate court record is devoid of any argument or evidence that this spanking occurred outside the date range set forth in the indictment; in fact, trial counsel acknowledged in closing argument that the injury likely happened on October 9, 2015. (*Id.,* PageID # 771.)

Even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Henderson guilty beyond a reasonable doubt, on habeas review courts must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above, notwithstanding Mr. Henderson's myriad arguments to the contrary asserted in his traverse. Accordingly, I recommend that this Court dismiss or deny Mr. Henderson's Ground One claim because he has not demonstrated that the state court judgment was contrary to, or an unreasonable application, of clearly established

federal law as determined by the Supreme Court of the United States.

B.    **Ground Two: Modifying or Vacating a State Court Sentence That Allegedly Violates the U.S. and Ohio Constitutions**

Mr. Henderson argues in his Petition that:

> The Sentence of Henderson (void ab initio and contrary to law, as the practice of corporal discipline punishment pedagogical was authorized and limited by common law) can be modified by or vacated by a superior court that is not clearly and convincingly supported by the Record.  5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

In response, the Warden states that Mr. Henderson "tends to obscure the issue as he presents it in his petition," and suggests that "the best place to start is [Mr.] Henderson's Memorandum in the Supreme Court of Ohio at the first proposition of law." (ECF No. 7, PageID # 70, citing Exhibit 23, Mem. In Support, p. 5-6.).  The Warden points out that, in Mr. Henderson's memorandum to the Supreme Court of Ohio, his complaint was a challenge to *State v. Marcum,* 146 Ohio St.3d 516 (2016), which held, applying that plain language of Ohio Revised Code 2953.08(G)(2), that a state appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes, or that the sentence is otherwise contrary to law.  (ECF No. 7, PageID # 70.) The Warden argues that Mr. Henderson is improperly asking this federal court to step into the shoes of Ohio state courts – including the Supreme Court of Ohio – and make findings under Ohio law that will reduce or modify Mr. Henderson's sentence.  (*Id.*)  For the reasons set forth below, the Warden's argument is well-taken.

A federal court's habeas review is confined to constitutional error only. "General habeas corpus relief does not lie for errors of state law" and "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  Claims concerning the improper application of, or departures from, sentencing guidelines

are state law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

While Mr. Henderson devotes 44 pages of argument (within his 256-page traverse) in support of his Ground Two claim – arguments that are frequently difficult to discern –  the Warden maintains in its answer that Mr. Henderson essentially appears to be asking this Court to find that the state courts erred in applying state sentencing laws.[5]  In his traverse, Mr. Henderson denies that is the case, stating:

> Petitioner in actuality is asking the Court to preserve National Constitutionally protected A.E.P.R.I.L.'s[6], and to protect his "status" from the "Chilling effect(s)" caused by invidious policies, custom, practices and/or procedures, retaliatory – applied maliciously and sadistically, perpetrated by the State agents for the very purpose of causing harm, to the extent of collusive and violative "<u>deliberate indifference</u>" (of protected classes).

(ECF No. 22-1, PageID # 1049, citing *Welch v. Magdeleno*, 2018 U.S. Dist. Lexis 228883 (emphasis added by Mr. Henderson).[7]  Notwithstanding Mr. Henderson's arguments to the contrary, I find that

---

[5] Many of Mr. Henderson's arguments in support of his Ground Two claim – such as challenges to the merger of the counts and certain rulings by the trial court – were never raised on direct appeal.  "A court cannot consider new issues raised in a traverse."  *Burns*, 328 F.Supp.2d at 724; *McClendon v. Wainwright*, 2018 WL 7982929, at *3 (N.D. Ohio Nov. 13, 2018).  Thus, this Report and Recommendation cannot address these entirely new arguments asserted for the first time in Mr. Henderson's traverse.  As an aside, however, the Ohio appellate court categorically rejected Mr. Henderson's merger argument in its ruling on the Motion to Correct a Void Judgment.  *Henderson*, 2020 WL 2950533, at ¶ 15.

[6] In his traverse, Mr. Henderson previously defined "A.E.P.R.I.L.'s" as "fundamental advantages, exemptions, privileges, rights, immunities, and liberties." (ECF No. 22-1, PageID # 1049.)

[7] While Mr. Henderson appears to rely on *Welch v. Magdeleno,* 2018 U.S. Dist. LEXIS 228883 (C.D. Cal. Jan. 9, 2018) in

the Warden's argument that Mr. Henderson is in fact relying on alleged state court errors in applying state court sentencing law is well-taken. Thus, Mr. Henderson's Ground Two Claim is not cognizable, and the state appellate court's determination that there was no sentencing error is "axiomatically correct on habeas review." *Adrianson v. Howard,* Case No. 1:20-cv-952, 2021 WL 3518649, at *5 (W.D. Mich. July 12, 2021), *report and recommendation adopted* 2021 WL 3510778.

Moreover, the state appellate court reasonably determined that the trial court's sentence was not clearly and convincingly contrary to law is not an unreasonable application of law, explaining its reasoning as follows:

### Ninth Assignment of Error

"Ericulo Henderson's sentence is not supported by competent, credible evidence in the record."

{¶ 88} At sentencing, the state agreed all offenses merged. Sentencing Tr. 3. It elected to have Appellant sentenced on second-degree felony child endangering. The trial court imposed an eight year sentence, the maximum allowable by law. Sentencing Tr. 11-13; 7/24/15 J.E. In imposing this sentence the trial court considered the factors in R.C. 2929.11 and R.C. 2929.12. Sentencing Tr. 11-12; 7/24/15 J.E. It then stated this was the worst form of the offense, there was a great likelihood of recidivism, and the shortest prison term would demean the seriousness of the offense. Sentencing Tr. 17.

{¶ 89} Appellant contends the record does not support the imposition of an eight year maximum sentence or those findings. He argues this sentence is disproportionate to similar crimes by similar offenders and refers to the cases cited in his sufficiency of the evidence argument. The state counters arguing the trial court has total discretion in imposing a sentence within the applicable range and we have no authority to review it.

{¶ 90} Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Under R.C. 2953.08(G)(2) an "appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* A sentencing court must consider the purposes and principles of sentencing in accordance with R.C. 2929.11; the seriousness and recidivism factors set forth in R.C. 2929.12; and the appropriate consecutive sentence requirements enumerated in R.C. 2929.14(C)(4).

---

support of this argument, its relevance is unclear. In *Welch,* the Court dismissed the plaintiff's 1983 claims for failing to comply with Fed. R. Civ. P. 8 (noting that the 57-page First Amended Complaint "is difficult to decipher," and "disorganized") and for failure to state a valid claim against any of the defendants.

{¶ 91} In this case, we only have one sentence, so the consecutive sentence requirements are not at issue.

> {¶ 92} R.C. 2929.11 enumerates the overriding purpose of felony sentencing: A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

R.C. 2929.11(A).

{¶ 93} The trial court clearly indicated it considered this statute. Sentencing Tr. 11, 12-13; 7/24/15 J.E. At sentencing the court stated:

> The court finds that defendant is not amendable to community control and that prison is the only sanction consistent with the principles and purposes of sentencing. The court also finds that using the minimum sanction would not accomplish the overriding purposes of felony sentencing without imposing an unnecessary burden on the state or local government resources.

Sentencing Tr. 12-13.

{¶ 94} R.C. 2929.12 sets forth factors to consider in determining the appropriate sentence. The statute contains a nonexclusive list of factors that render an offender's conduct more serious than conduct normally constituting the offense and factors that render an offender's conduct less serious than conduct normally constituting the offense. R.C. 2929.12(B)(C). Likewise, the statute sets forth a nonexclusive list of factors indicating the offender is more likely to commit future crimes and factors indicating recidivism is less likely. R.C. 2929.12(D)(E).

{¶ 95} The trial court indicated it considered those factors. Sentencing Tr. 11-12; 7/24/15 J.E. At the sentencing hearing, the trial court discussed the seriousness factors:

> The court finds that the following seriousness factors were shown by the evidence in this case: Number one, the physical or mental injuries sustained by the victim was exacerbated because of the physical condition and age of the victim; two, the victim suffered severe physical harm; three, the offender held a position of trust in the community; four, the offender's occupation obligated him to prevent the offense or bring others committing to justice; five, the offender's professional occupation as a tutor and educator was used to facilitate the offense; six, the offender's relationship with the victim facilitated the offense.

So of the nine seriousness factors that I'm to consider with regard to sentencing, the evidence showed that six of them apply in this case.

* * *

We are back on the record. As I left the courtroom, it occurred to me that I did not put on the record my rationale with regard to the maximum sentence and I need to do that now. I do find that because of the seriousness factors that I listed earlier that this is the worst form of the offense, that it creates the greatest likelihood of future crimes and that the shortest sentence would demean the seriousness of this offense.

Sentencing Tr. 11-12, 17.

{¶ 96} At the sentencing hearing, the trial court did not discuss recidivism factors, however, a PSI was prepared and the record indicates Appellant is a middle aged man with no criminal record.

{¶ 97} The sentence issued in this case does fall within the sentencing range set forth in R.C. 2929.14(A)(2); the applicable prison terms for second-degree felonies are two, three, four, five, six, seven, or eight years.

{¶ 98} Given all the above and the standard of review, we cannot conclude the sentence is clearly and convincingly contrary to law. The record indicates the trial court considered all the required statutes and issued a sentence within the applicable range. Furthermore, the trial court's application of the seriousness factors corresponds with the facts of the case. The victim was young, 11 years old, and Appellant was the victim's tutor and held a position of trust. Although this court would not have imposed the maximum sentence in this case, given our limited standard of review and the trial court's reasoning, there is no basis for this court to conclude the sentence is contrary to law. We are required to afford deference to the trial court's broad discretion in making sentencing decisions; trial courts have great latitude and discretion in formulating the appropriate sentence. *State v. Rahab*, 150 Ohio St.3d 152, 2017–Ohio–1401, 80 N.E.3d 431, ¶ 10. This assignment of error lacks merit.

(Exhibit 21); *Henderson,* 2018 WL 3428753, at ¶¶ 88-98.

Here, the state appellate court's determination of the sentencing issue was not an unreasonable application of law because: (1) the record indicates the trial court considered all the required Ohio state statutes and then issued a sentence within the applicable range; and (2) the trial court's application of the seriousness factors correspond with the facts of this case because E.D. was only 11 years old, and Mr. Henderson was E.D.'s tutor and held a position of trust. *Id.* at ¶ 98. Thus, even if Mr. Henderson's claim is cognizable on habeas review (and it is not), I do not find that the state appellate court's conclusion was clearly and convincingly contrary to law, notwithstanding Mr.

Henderson's myriad arguments to the contrary asserted in his traverse.  Accordingly, I recommend that this Court dismiss and/or deny Mr. Henderson's Ground Two claim.

### C.    Ground Three: Admission of Expert Testimony

In his Petition, Mr. Henderson asserts the following Ground Three for relief:

> Expert testimony declaring a corporal punishment event as excessive, when that determination constitutes an element of an offense is improper, 5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

(ECF No. 1, PageID # 9.) Mr. Henderson also identifies the following supporting facts in his Petition:

> An expert's uncorroborated testimony "assist[s] the trier," only if it relates to matters "beyond the ken" of the ordinary person.  The jury was required to determine, if Mr. Henderson's sequential paddling under private performance contract was excessive.  Expert opinion without medical jurisprudence on excessiveness, is improper, prejudicial, and absurd in this instance.

(*Id.*)

Mr. Henderson devotes 26 pages of argument (within his 256-page traverse) in support of his Ground Three claim, and many of these arguments appear to have been advanced for the first time in his traverse.[8]  As noted previously, these arguments are frequently difficult to discern, and "a court cannot consider new issues raised in a traverse." *Burns,* 328 F.Supp.2d at 724; *McClendon v. Wainwright*, 2018 WL 7982929, at *3.  Thus, this Report and Recommendation cannot address entirely new issues or arguments asserted for the first time in Mr. Henderson's traverse.

In his answer, the Warden argues that expert testimony is an evidentiary issue and is not

---

[8] While not an exhaustive list, the Court need not address the following arguments Mr. Henderson raised for the first time in his traverse, such as: (1) Dr. Melville does not have "proper board certifications" and is "afflicted with a developmental disability" (ECF No. 22-1, PageID # 1098); (2) Dr. Melville performed both forensic interview and physical examination in violation of Child Advocacy Center policy and procedure (*id.,* PageID # 1102); (3) there was "no investigative research evidenced by either [Dr. Melville] or court-appointed defense counsel, as procedurally required to factual evidence of Petitioner exhibiting the arm strength abilities required to create or generate the alleged, serious physical harm," (*id.,* PAGE ID # 1105), and Mr. Henderson's lack of arm strength due to a pre-existing injury should have been "mitigating objective evidence"; (4) the trial court violated her gatekeeping duty of impartiality by amending the "fatally flawed" indictment (*id.,* PageID # 1107); and (5) "The Prosecutor alone initiated the complaint, an action from which s/he was barred" (*id.,* PageID # 1109).

cognizable in federal habeas corpus unless the ruling is egregious and results in a denial of fundamental fairness. (ECF No. 7, PageID # 75-77.) For the following reasons, I find the Warden's argument is well-taken.[9]

The Sixth Circuit has recognized that "[w]ith regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon,* 874 F.3d 470, 475. Indeed, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Id.* (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Id.* Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Wilson,* 874 F.3d at 475 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)).

Significantly, "[e]ven if errors are made in the application of state law, 'such errors ... especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.'" *Wilson,* 874 F.3d at 475 (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983)). But "[i]f a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Wilson,* 874 U.S. at 475 (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). Significantly, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend some principle of justice so rooted in the traditions and conscience of

---

[9] In the alternative, the Warden maintains Mr. Henderson's Ground Three claim is procedurally defaulted or meritless because Mr. Henderson's challenge of expert testimony on appeal was not asserted as a freestanding claim, but instead was advanced within the context of an ineffective assistance of counsel claim and for plain error. Yet, the Warden acknowledges elsewhere in its Response that "although there may be some minor differences in composition of the first three habeas grounds as [Mr.] Henderson presents them in this forum and the exact language used in the Ohio courts during the review of those same three claims in the Ohio courts, the better practice is to allow leniency to [Mr.] Henderson as a pro se petitioner and allow review of the first three claims within the limitation of what was fairly presented to the state courts." (ECF No. 7, PageID # 45.) Because the Warden's argument in this regard is persuasive, I will not address the Warden's procedural default argument advanced in the alternative as to Ground Three.

our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Ultimately, "states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson,* 874 F.3d 476 (citing *Seymour,* 224 F.3d at 552; *Egelhoff,* 518 U.S. at 43.)  Moreover, to show a due process violation under AEDPA rooted in an evidentiary ruling, the Sixth Circuit has required a U.S. Supreme Court case establishing a due process right with regard to that specific kind of evidence.  *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012).

Here, the state appellate court outlined the nature of Dr. Melville's expert testimony:

{¶ 34} The doctor was asked what are reasonable physical disciplinary measures. Trial Tr. 260. He explained nobody is opposed to physical discipline in general, but if it is to be administered then it is recommended to be hand to buttocks and that it not leave any marks that would persist for more than 4 to 5 minutes. Trial Tr. 260. Based on what he observed in this case he opined that the victim's injury was the result of unreasonable physical discipline.

Trial Tr. 261.

(Exhibit 21); *Henderson,* 2018 WL 3428753, ¶ 34.

The state appellate court also ruled that Dr. Melville's testimony on the central issue in this case – *i.e.,* is "unreasonable" physical discipline? - was permissible, explaining its reasoning as follows:

2. Expert Testimony

{¶ 57} This argument concerns Dr. Melville's trial testimony. Appellant asserts expert testimony is only needed for matters beyond the experience of the ordinary person. He argues the jury was required to determine if the paddling was excessive. Dr. Melville, when asked if the "injury was the result of unreasonable physical discipline," opined it was. Trial Tr. 260. He contends this was improper expert testimony and counsel was ineffective for failing to object to the testimony.

{¶ 58} The state asserts Dr. Melville's testimony was proper and cites this court to many cases where an expert was permitted to offer opinions in sexually abused children cases.

{¶ 59} Evid.R. 702 governs expert testimony and provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

Evid.R. 702.

{¶ 60} Appellant focuses on section (A); he does not dispute that Dr. Melville's entire professional career is devoted to child abuse pediatrics and his credentials were set forth by the state during direct examination. He focuses instead on whether a paddling was excessive is a matter beyond the knowledge or experience of a lay person.

{¶ 61} Although the majority of the cases where courts have found an expert's testimony was proper under Evid.R. 702 are sexual abuse cases, some appellate courts have indicated that a doctor's expert testimony is proper in a physical abuse case.

{¶ 62} For instance, the Third Appellate District was asked to determine whether a doctor was permitted to offer expert testimony on her "child torture" diagnosis. *State v. Hawkey*, 3d Dist. No. 4-14-03, 2016-Ohio-5369, ¶ 6. The state argued the evidence should have been permitted because the use of the term "child torture" had been used in other cases. *Id.* at ¶ 7. In finding the state's argument unpersuasive, the appellate court stated the cases cited by the state did not involve a diagnosis of "child torture." *Id.* The court then extrapolated, "This does not mean that [the Doctor] could not have testified as an expert as to child abuse. Just that she could not diagnose [the victim] as a victim of "child torture" when such a diagnosis was one she had created and by her own testimony was not widely accepted by the medical community." Id. Thus, the statement made by the court acknowledges that a doctor can testify as an expert on physical child abuse.

{¶ 63} Likewise, in a Second Appellate District case, the appellate court indicated a doctor was permitted to testify as an expert in a medical physical abuse case. *In re Z.S.*, 2d Dist. No. 25986, 2014-Ohio-3748, ¶ 50. The mother in that case claimed her children suffered several rare and fatal conditions even though tests confirmed the children did not. *Id.* at ¶ 5. The trial court permitted the doctor to testify as an expert on abuse:

> The record establishes that Dr. Roediger is exceptionally qualified to testify as an expert in the instant case. Dr. Roediger is a pediatrician and child abuse specialist who serves as the medical director for the Department of Child Advocacy at Dayton Children's Hospital. Dr. Roediger's C.V. establishes that she is Board Certified in General Pediatrics and Child Abuse Pediatrics. Dr. Roediger has an extensive educational background and has published articles in several medical journals. We note that her curriculum vitae was admitted without objection from Mother.

> Certainly, if Mother had actually objected to Dr. Roediger's qualifications as an expert, the objection would have been properly overruled pursuant to Evid. R. 702. *See State v. Hall*, 2d Dist Montgomery No. 25794, 2014–Ohio–2094, ¶ 6 (Dr. Vavul–Roediger is board certified in the fields of general pediatrics and child-abuse pediatrics, has evaluated thousands of children and adolescents for possible sexual abuse or sexual maltreatment, and has testified roughly one hundred times as an expert in general pediatrics and child-abuse pediatrics.)
>
> *Id.* at ¶ 50.
>
> {¶ 64} Thus, there are instances where expert testimony on physical child abuse was permitted. Here, the testimony concerned what type of physical discipline is excessive. The doctor had specialized knowledge on this issue. This could be an area where expert testimony is permissible because of the specialized knowledge doctors who specialize in this area can express to lay persons.
>
> {¶ 65} Furthermore, Evid.R. 702(A) indicates there are two scenarios where an expert can offer an opinion. One is where the witness' testimony "relates to matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702(A). The second is when the expert's witness' testimony "dispels a misconception common among lay persons." Evid.R. 702(A). The amount of physical punishment that is excessive might be something that needs to be dispelled, and thus, the doctor's testimony would be permissible.
>
> {¶ 66} Given the above case law the testimony was admissible. Counsel's failure to object to the Dr. Melville's testimony did not amount to deficient performance. Appellant's arguments to the contrary lack merit.

(Exhibit 21); *Henderson,* 2018 WL 3428753, at ¶¶ 57-66.

I do not find that the state appellate court's opinion resulted in a denial of fundamental fairness because: (1) there is no dispute that Dr. Melville's entire professional career is devoted to child abuse pediatrics, and his credentials were well-established; (2) other Ohio appellate courts have held that a doctor's expert testimony is proper in a physical abuse case; (3) Dr. Melville had specialized knowledge regarding what type of discipline is excessive; and (4) the amount of physical discipline that is excessive might be something that is needed to dispel a misconception common among lay persons.  *Id.*  Additionally, Mr. Henderson appears to believe that Dr. Melville's testimony was the sole or motivating factor for his convictions.  In doing so, he ignores trial court record evidence upon which – even if Dr. Melville had not testified - the jury could have reached its

conclusion that the spanking was unreasonable, such as testimony from E.D., his mother, and his aunt about E.D.'s injury, as well as photographs of the injury.  (Trial Tr. Vol. I, PageID # 582, 586, 606, 609-10; Trial Tr. Vol. II, PageID # 628-30.) Finally, Mr. Henderson failed to provide any Supreme Court authority establishing a due process right  regarding expert testimony, much less apply that authority to the facts of his case.  Accordingly, I recommend that the Court dismiss and/or deny Mr. Henderson's Ground Three claim.

### D.    Grounds Four, Five, and Six: In Loco Parentis

Mr. Henderson asserts the following grounds for relief and supporting facts:

**GROUND FOUR:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to assure that the indictment adequately set forth the requirements for alleging "in loco parentis" with an affirmative defense of justifiable immunity.

**Supporting Facts**: The indictment on its face does not comply with any associated logical criminal/tort schema required of Ohio state, Ohio Supreme Court or federal, U.S. Supreme Court precedence.

**GROUND FIVE:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to provide proper jury instructions on teacher qualified justifiable immunity alleging "in loco parentis" status, in the indictment.

**Supporting Facts:** An affirmative defense status/jurisdiction could have or should have been instructed to the jury. A preliminary re-creation, due process inclusive of associated logical criminal/tort schema.

**GROUND SIX:** Petitioner asserts that his conviction was not supported by sufficient evidence in light of his claim that his status constituted reasonable parental-pedagogical actions discipline under the ("in loco parentis") circumstances.

**Supporting Facts:** The allocation conflict of proving the unlawfulness or parental discipline is currently before the Ohio Supreme Court upon determination that a jurisdictional conflict exists, prejudicing the Petitioner, who was denied due process to disprove the element of the alleged offenses. The lone Ohio Supreme Court case allocates the burden of proving the unlawfulness of parental discipline on the state, as an element of the offense. The unique nature of the parent/child relationship of "in loco parentis," status/jurisdiction/private contract, including the parent's right to discipline the child, including the use of corporal punishment underscores the importance of clarifying the law in the 7th District Court of Appeals.

The Warden correctly points out that Grounds Four, Five, and Six "all center in one way or

another around an 'in loco parentis' argument as that element is applied under Ohio law." (ECF No. 7, PageID # 45.) And the Warden also argues that all of these claims face two insurmountable hurdles. (*Id.*) First, they are procedurally defaulted because Mr. Henderson did not present an ineffective assistance of trial counsel claim relating to in loco parentis on direct appeal; thus, he failed to exhaust state remedies, and these remedies are no longer available. (*Id.,* PageID No. 46.) Second, even if Grounds Four, Five, and Six could be amended to assert ineffective assistance of appellate counsel claims for failure to raise the in loco parentis arguments, there would be no effect on the judgment in light of the state appellate courts' interpretation of Ohio law. (*Id.*)

While Mr. Henderson devotes approximately 106 pages (of his 256-page traverse) in support of Grounds Four, Five, and Six, he does not appear to advance any argument regarding why these claims are not procedurally defaulted. Rather, Mr. Henderson's primary argument is "providing [this Court] with:

> a thorough historic foundational background to and on the subject of 'in loco parentis" **status** and its supersedant (sic), "Sui generis, in loco parentis" **status,** as it pertains to students/pupils engaged in <u>private</u> tutoring, i.e., "pedagogical" lessons and settings. Word definitions and etymology, "etymological history" are assential for the study and adjudication of any case, more especially this case. The fact that 'sui generis' and 'in loco parentis are **international concepts,** <u>drives the metric measures for analysis.</u>

(ECF No. 22-1, PageID # 1131; *see generally* PageID # 1131-1179, 1210-1216) (emphasis in original).[10] Mr. Henderson also appears to generally advance to this Court in his traverse the same arguments he raised in his unsuccessful Rule 26(B) application: (1) the indictment fails to forth the in loco parentis status; (2) the jury was not being adequately instructed on the in loco parentis element; and (3) there was not sufficient evidence and/or the conviction was against the manifest

---

[10] While not an exhaustive list, the Court need not address arguments Mr. Henderson raised for the first time in his traverse, such as: (1) the trial court's finding at sentencing that Mr. Henderson showed no remorse was error (ECF No. 22-1, Page ID # 1203); (2) the trial court's sentence was vindictive (*id.,* PageID # 1201); (3) the jurors were not "peers," (*id.,* PageID # 1216); and (4) the general public has been infected by media coverage and false perceptions based on the Supreme Court's 1969 decision in *Tinker* (*id.,* PageID # 1221).

weight of the evidence because the evidence did not and could not establish he was in loco parentis to the victim.  For the following reasons, I find that the Warden's arguments are well-taken.

### 1. Procedural Default

The Warden correctly points out that Mr. Henderson did not present the claims now asserted in Grounds Four, Five, and Six on their merits to the Ohio courts.  Rather, they were a component of Mr. Henderson's ineffective assistance of appellate counsel claims, as asserted in his application under Ohio App. R. 26(B):

1. Appellate Counsel was Ineffective for failing to raise that the indictment did not adequately set forth the requirements for alleging in loco parentis status.

2. Appellate Counsel failed to present for review that Trial counsel erred to the prejudice of the Appellant by failing to provide proper Jury Instructions on teacher immunity alleging "in loco parentis" status, in the indictment.

3. Defendant-Appellant asserts that his conviction was not supported by sufficient evidence and/or against the manifest weight of the evidence in light of his claim that his actions constituted reasonable parental (in loco parentis) discipline under the circumstances.

But it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct." *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008)) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir.2005)). Thus, "a Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim. *Davie,* 547 F.3d at 312 (citing *White,* 431 F.3d at 526); *see also Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir.2003) (noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of" the ineffective assistance claim, not the underlying state procedural rule claim)).  And to the extent that Mr. Henderson attempts to assert a sufficiency of the evidence claim based on in loco parentis, that argument is foreclosed for the reasons set forth in this Report and Recommendation as to Ground One.

In denying Mr. Henderson's application for reopening based on the in loco parentis element, the state appellate court explained:

{¶ 6} All three assignments of error concern the in loco parentis element of R.C. 2919.22(A)(E)(1)(2)(c), third-degree felony child endangering. Section (A) of that statute provides, "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Appellant contends that the only way he could have been found guilty of this section was if it was determined he was a person in loco parentis and merely being a tutor for the child was not sufficient to render him in loco parentis.

{¶ 7} The arguments Appellant presents concern the indictment not setting forth the in loco parentis status, the jury not being adequately instructed on the in loco parentis element, and there was not sufficient evidence and/or the conviction was against the manifest weight of the evidence because the evidence did not and could not establish he was in loco parentis to the victim. Appellant's arguments may have merit; however, any error resulting from these failures only amounts to harmless error.

{¶ 8} Appellant was found guilty of second-degree felonious assault in violation of R.C. 2903.11(A)(1)(D), second-degree felony child endangering in violation of R.C. 2919.22(B)(3)(E)(1)(3) and third-degree felony child endangering in violation of R.C. 2919.22(A)(E)(1)(2)(c). The parties agreed the offenses were allied offenses of similar import and the verdicts merged. The state elected to have Appellant sentenced on the second-degree felony child endangering verdict. Second-degree felony child endangering in violation of R.C. 2919.22(B)(3) states no person shall administer corporal punishment to a child under the age of 18 that is excessive under the circumstances and creates a substantial risk of serious physical harm to the child. In loco parentis is not an element of this offense. In the direct appeal, this court reviewed whether there was sufficient evidence to prove this offense and determined there was sufficient evidence that the corporal punishment was excessive and created a substantial risk of serious physical harm to the child. *Henderson*, 7th Dist. No. 15 MA 137, 2018-Ohio-2816, ¶ 10-38.

{¶ 9} Courts have held, in merged offense cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense. *State v. Worley*, 8th Dist. No. 103105, 2016–Ohio–2722, ¶ 23, citing *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) (Even if evidence of kidnapping by restraint was insufficient to support conviction, the fact that the kidnapping by removal was based on sufficient evidence and merged with the kidnapping by restraint count means any error with the conviction was harmless beyond a reasonable doubt.); *State v. Croom*, 7th Dist. No. 12 MA 54, 2013–Ohio–5682, ¶ 60-61 ("The Supreme Court has concluded that, even if there is insufficient evidence to support one count, where that count has been merged with another count, the error in rendering a verdict on that count is harmless beyond a reasonable doubt."), citing *Powell; State v. Washington*, 10th Dist. No. 09AP–424, 2009–Ohio-6665, ¶ 18 (court

is not required to address appellant's sufficiency of the evidence challenge to the kidnapping offenses because the trial court merged those offenses into others). That reasoning also applies to the indictment issue, jury instruction issue and manifest weight argument. *State v. Springer*, 8th Dist. No. 104649, 2017-Ohio-8861, ¶ 15 (manifest weight); *State v. Ramos*, 8th Dist. No. 103596, 2016-Ohio-7685, ¶ 14 (holding that when counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless); *State v. Franks*, 8th Dist. No. 103682, 2016-Ohio-5241, ¶ 18 (jury instructions). Therefore, any error regarding the in loco parentis status for a third-degree felony child endangering guilty verdict is harmless beyond a reasonable doubt. On that basis Appellant cannot satisfy the prejudice prong of the ineffective assistance of appellate counsel test; Appellant cannot demonstrate the outcome of the case would have been different.

*State v. Henderson,* 2018 WL 6707862, ¶¶ 6-9.

Mr. Henderson cannot avoid procedural default based on an argument that he suffered prejudice because the state appellate court reasonably applied Ohio law and concluded as set forth above that: (1) in loco parentis is not an element of the offense (R.C. 2919.22(B)(3)) under which he was sentenced; and (2) in merged offenses cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense. *Id.* Nor can Mr. Henderson establish a miscarriage of justice because he confessed at trial that he hit E.D. with a wooden paddle five times during a single tutoring session, and the State's closing argument repeatedly emphasized this point.  (ECF No. 7-3, Trial Tr. Vol. II, PageID # 736-38; 749-50; 765); *Bonal v. Mitchell,* 301 F.Sup.2d 698, 724 (N.D. Ohio 2004) ("A fundamental miscarriage of justice is a conviction of one who is 'actually innocent.'" (citing *Coleman,* 501 U.S. at 750; *Murray,* 477 at 496)).  Accordingly, notwithstanding the myriad arguments Mr. Henderson advances in his traverse, I recommend that this Court find that Grounds Four, Five, and Six are procedurally defaulted.

## 2. Ineffective Assistance of Counsel

In the 106 pages of argument Mr. Henderson (in his 256-page traverse) devotes to his Ground Four, Five, and Six claims, his ineffective assistance of counsel claim appears largely

targeted on the alleged deficiencies of his *trial counsel's* performance in, among other things, failing

to argue that an in loco parentis jury instruction should have been provided. (*See, e.g.,* ECF No. 22-

1, PageID # 1179 ("The Court of Appeals in this case abused and/or misapplied each and every, all

and any doctrine and their judgment was lawfully and legally flawed, Petitioner has shown a

substantial violation of *ineffective assistance of trial counsel*, and the Court of Appeals total

misunderstanding of Petitioner's 'Sui generis, in loco parentis' status and standing.") (emphasis

added). As discussed above, Mr. Henderson's ineffective assistance of trial counsel claims are

procedurally defaulted.

Mr. Henderson makes some argument in his traverse, however, that his appellate counsel

was ineffective for failing to raise this issue. For example, Mr. Henderson argues:

> The second appointed appellate attorney OPDO-Columbus – Legally unable to respect the
> lawful Status of his client and applicable Statues (sic), Petitioner assets and claims, due to
> 1985 American Association of Pediatrics (AAP)-ABA Family Law Report Policy resolution.
> Was also ineffective, appointed almost two years after sentencing, but unwilling to address
> the essentials of a void indictment and the aegis provisions of Petitioner's "in local parentis
> status. Immediately recognized it as a non-appealable order.

(ECF No. 22-1, PageID # 1205). But even if this Court were to construe Grounds Four, Five, and

Six as setting forth ineffective assistance of appellate counsel claims, they still fail for the reasons

set forth below.

The right to effective assistance of counsel extends to the first appeal as of right. *Evitts v. Lucey*,

469 U.S. 387, 392 (1985). In *Strickland v. Washington*, the U.S. Supreme Court established that a

petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell

below an objective standard of reasonableness," such that he was not performing as counsel guaranteed

under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. 466

U.S. 668, 688 (1984). This standard applies to claims that appellate counsel was constitutionally

ineffective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 477

(2000). To act as counsel guaranteed by the Sixth Amendment, appellate counsel need only exercise reasonable professional judgment, and is not obligated to raise every "colorable" claim on appeal. *Jones v. Barnes*, 463 U.S. 756, 754 (1983); *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Further, counsel cannot be ineffective for failing to raise a meritless claim. *Shaneberger*, 615 F.3d at 451; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (indicating that the task of winnowing out less persuasive argument on appeal is the hallmark of an effective appellate advocate). To establish prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As set forth in the immediate section above, state appellate court reasonably applied Ohio law and concluded that: (1) in loco parentis is not an element of the offense (R.C. 2919.22(B)(3)) under which Mr. Henderson was sentenced; and (2) in merged offenses cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense. *Henderson*, 2018 WL 6707862, ¶¶ 6-9. Thus, the appellate court reasonably concluded that Mr. Henderson's ineffective assistance of appellate counsel fails because Mr. Henderson cannot demonstrate there is a reasonable probability that the outcome of his case would have been different. *Id.* Mr. Henderson, therefore, cannot satisfy the prejudice prong of the ineffective assistance of appellate counsel test. *Strickland*, 466 U.S. at 694. Stated differently, Mr. Henderson's trial appellate cannot be ineffective for failing to raise a meritless claim. *Shaneberger*, 615 F.3d at 451; *see also Smith*, 477 U.S. at 536 (1986). Accordingly, notwithstanding Mr. Henderson's myriad arguments asserted in his traverse in support of Grounds Four, Five, and Six, I recommend that this Court dismiss and/or deny these claims.

48

## V.     **RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

Here, Mr. Henderson has not made a substantial showing of a denial of a constitutional right for the reasons set forth above.  Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VI.    RECOMMENDATION REGARDING EVIDENTIARY HEARING

Under AEDPA, the question of whether a state court decision on the merits of any constitutional claim can be overturned in habeas corpus must be decided on the basis of the factual record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 207 (2011). "In other words, 'district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue.'" *Thompson v. Bauman*, No. 16-2258, 2018 WL 566408, at *1 (6th Cir. Jan. 26, 2018) (quoting *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013)).

Under 28 U.S.C. § 2254(e)(2), if an applicant for habeas relief "has failed to develop the factual basis of a claim in State court proceedings," a district court may not grant an evidentiary hearing on the claim unless the applicant shows that:

(A) the claim relies on— (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Mr. Henderson requests an evidentiary hearing on several claims for relief in his traverse (*see, e.g.,* Ground Three (ECF No. 22-1, PageID# 1093-95); Grounds Four (*id.,* PageID # 1179) and Ground Six, *id.,* PageID # 1237), though it does not appear he did so in his petition. As set forth throughout this Report and Recommendation, "[n]ew issues may not be raised in the traverse."  *Burns,* 328 F.Supp.2d at 724; *McClendon,* 2018 WL 7982929, at *3.  Yet even if this Court were to allow Mr. Henderson's

50

request for an evidentiary hearing to be asserted in the traverse, such a request is wholly without merit. Mr. Henderson does not argue he requires an evidentiary hearing based on a new rule of constitutional law. He also has not asserted that there exists a factual predicate that could not have been previously discovered through the exercise of due diligence. Accordingly, I recommend that Mr. Henderson's request for an evidentiary hearing be DENIED.

## VII.   RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Henderson's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability or conduct an evidentiary hearing.

Dated:  February 21, 2023

_s/Jennifer Dowdell Armstrong_
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).