UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ericulo Henderson,                                                Case No. 4:20-cv-283

                    Petitioner,

        v.                                                        MEMORANDUM OPINION
                                                                  AND ORDER

Brian Cook, Warden,

                    Respondent.

## I.    INTRODUCTION

Petitioner Ericulo Henderson filed a *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2254, concerning his conviction in the Mahoning County, Ohio Court of Common Pleas

on charges of felonious assault and felony child abuse. (Doc. No. 1). Magistrate Judge Jennifer

Dowdell Armstrong reviewed the petition as well as the related briefing pursuant to Local Rule

72.2(b)(2) and recommends I deny Henderson's grounds for relief and dismiss his petition. (Doc.

No. 29). Henderson filed objections to Judge Armstrong's Report and Recommendation. (Doc.

No. 35). Henderson also filed two motions to supplement and to expand the record. (Doc. Nos. 34

at 38). For the reasons stated below, I deny Henderson's motions, overrule his objections, and

adopt Judge Armstrong's Report and Recommendation.

## II.    BACKGROUND

Henderson was charged by indictment by a Mahoning County, Ohio grand jury with one

count each of second-degree felonious assault and second and third-degree felony child endangering.

The charges arose from injuries suffered by an 11-year-old child whom Henderson tutored.

Henderson was convicted of all three charges following a jury trial and was sentenced to 8 years in prison. Judge Armstrong summarized the factual and procedural history of this case by reference to the factual findings adopted by the Court of Appeals of Ohio for the Seventh District. (*See* Doc. No. 29 at 2-9).

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Henderson must demonstrate, by clear and convincing evidence, that the state court's factual findings were incorrect. *Id. See also Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'") (quoting 28 U.S.C. § 2254(e)(1)).

Henderson has not done so. Instead, he contends the state appellate court's conclusions "are not cognizable, because the sentence is void and not ripe for appeal." (Doc. No. 35 at 4-5). While Henderson appears to claim his sentence was void because the Mahoning County Court of Common Pleas lacked jurisdiction over him, (*id.* at 7), the state courts rejected this argument and Henderson has not offered any evidence – much less clear and convincing evidence – that his claim is true. Therefore, I overrule his objections and adopt those sections of the Report and Recommendation in full. (Doc. No. 29 at 2-9).

### III.  STANDARD

Once a magistrate judge has filed a report and recommendation, a party to the litigation may "serve and file written objections" to the magistrate judge's proposed findings and recommendations, within 14 days of being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Written objections "provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately' . . . [and] 'to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute.'" *Kelly v. Withrow*, 25

2

F.3d 363, 365 (6th Cir. 1994) (quoting U*nited States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) and

*Thomas v. Arn*, 474 U.S. 140, 147 (1985)).  A district court must conduct a *de novo* review only of the

portions of the magistrate judge's findings and recommendations to which a party has made a

specific objection.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

## IV.    DISCUSSION

### A.  MOTIONS TO EXPAND THE RECORD

Henderson filed two motions to expand and supplement the state court record.  In one

motion, he seeks to supplement the record with six exhibits presented during his trial – five of

which consisted of photographs and one containing medical records and the transcript of an

interview between the victim and the examining physician.  (Doc. No. 34).  As Henderson

acknowledges, (*id.* at 1), he previously filed a motion seeking to supplement the record with the same

six exhibits.  (Doc. No. 9).  Magistrate Judge William H. Baughman, Jr. denied that motion, agreeing

with Respondent's argument that "supplementing the record with these exhibits would be an

attempt to challenge the facts as found by the Ohio appeals court without providing a[] basis for

showing by clear and convincing evidence that they are incorrect."  (Doc. No. 18 at 5).

Henderson does not address Judge Baughman's conclusion and it is not entirely clear why he

seeks to include these materials.  He appears to suggest these exhibits would undermine the jury's

verdict, because, in his view, "it was never explained or demonstrated as to how [the act] rose to the

level of being an offense of child abuse, particularly as it pertains to the charges of felonious assault

and child endangering."  (Doc. No. 34 at 5).  But Henderson's disagreement with the jury's

conclusions is not an adequate reason to expand the record, particularly when the trial transcripts

adequately describe the nature of the victim's injuries and the manner in which they were inflicted.

Henderson fails to show these exhibits "could resolve any factual disputes that could entitle him to

relief." *Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004) (citation and internal quotation marks omitted). Therefore, I deny his first motion to expand the record.

In his second motion, Henderson seeks to supplement the record with documents he obtained through a Freedom of Information Act request, specifically records from the victim's initial appointment with Dr. John Melville, the physician who subsequently testified about the extent of the victim's wounds at trial. (Doc. No. 38); (*see also* Doc. Nos. 38-1 and 38-2). These documents appear to be the same as, or substantially similar to, the documents which constitutes Exhibit 6, referenced in Henderson's first motion. (*See* Doc. No. 34 at 1) (describing Exhibit 6 as consisting of "[m]edical record and transcript of victim['s] interview with Dr. Melville"). Therefore, I deny Henderson's second motion for the same reason as his first motion.

## B. HABEAS PETITION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits the issuance of a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

Henderson offers the following grounds for relief:

**Ground One**: A single abrasion does not constitute serious physical harm, 5th and 14th Amendments, United States constitution, article 1 section 10 and 16, Ohio constitution, and that evidence is insufficient to convict petitioner.

**Supporting Facts:** The alleged injury cause under private performance contract by Mr. Henderson's sequential paddling of a fully clothed, 11-year-old student purportedly a 6 cm by 0.5 cm abrasion, (0.93 inches square) was not serious physical

harm and as described was not explainable or within any age-date-able-time frame, for nexus.

**Ground Two**: The Sentence of Henderson (void ab initio and contrary to law, as the practice of corporal discipline punishment pedagogical was authorized and limited by common law) can be modified by or vacated by a superior court that is not clearly and convincingly supported by the Record.  5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

**Supporting Facts**: An appellate court may modify a felony sentence that is not clearly and convincingly supported by the records. 5th, 6th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

**Ground Three:** Expert testimony declaring a corporal punishment event as excessive, when that determination constitutes an element of an offense is improper, 5th and 14th Amendments, United States Constitution, Article 1 Sections 10 and 16, Ohio Constitution.

**Supporting Facts**: An expert's uncorroborated testimony "assist[s] the trier," only if it relates to matters "beyond the ken" of the ordinary person. The jury was required to determine, if Mr. Henderson's sequential paddling under private performance contract was excessive.  Expert opinion testimony without medical jurisprudence on excessiveness, is improper, prejudicial and absurd in this instance.

**Ground Four:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to assure that the indictment adequately set forth the requirements for alleging "in loco parentis" with an affirmative defense of justifiable immunity.

**Supporting Facts**: The indictment on its face does not comply with any associated logical criminal/tort schema required of Ohio state, Ohio Supreme Court or federal, U.S. Supreme Court precedence.

**Ground Five:** Trial Counsel erred to the prejudice of the Petitioner, and was deficient for failing to provide proper jury instructions on teacher qualified justifiable immunity alleging "in loco parentis" status, in the indictment.

**Supporting Facts:** An affirmative defense status/jurisdiction could have or should have been instructed to the jury. A preliminary re-creation, due process inclusive of associated logical criminal/tort schema.

**Ground Six:** Petitioner asserts that his conviction was not supported by sufficient evidence in light of his claim that his status constituted reasonable parental-pedagogical actions discipline under the ("in loco parentis") circumstances.

**Supporting Facts:** The allocation conflict of proving the unlawfulness or parental discipline is currently before the Ohio Supreme Court upon determination that a jurisdictional conflict exists, prejudicing the Petitioner, who was denied due process to disprove the element of the alleged offenses.  The lone Ohio Supreme Court case allocates the burden of proving the unlawfulness of parental discipline on the state, as an element of the offense.  The unique nature of the parent/child relationship of "in loco parentis," status/jurisdiction/private contract, including the parent's right to discipline the child, including the use of corporal punishment underscores the importance of clarifying the law in the 7th District Court of Appeals.

(Doc. No. 29 at 15-16); (*see also* Doc. No. 1 at 6, 8-10, and 12-13).

## A.  GROUNDS ONE AND SIX

In Grounds One and Six, Henderson contends there was insufficient evidence to support his conviction.  Judge Armstrong concluded Henderson's conviction was supported by sufficient evidence and that Henderson failed to demonstrate the state court's decision affirming his conviction was contrary to or an unreasonable application of clearly established federal law.  (Doc. No. 29 at 21-32).

In a sufficiency-of-the-evidence claim, a defendant asserts his conviction violated his due-process rights because the evidence did not "reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  "[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in *Jackson*).  This "deferential" standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman*, 566 U.S. at 655 (quoting *Jackson*, 443 U.S. at 319).

6

Moreover, a habeas petitioner must show more than that "reasonable minds reviewing the record might disagree with the state court's factual determination . . . ." *Carter v. Bogan*, 900 F.3d 754, 768 (6th Cir. 2018). Section 2254(d)(2) "imposes a highly deferential standard" which requires that "the record must '*compel* the conclusion that the [state] court had no permissible alternative' but to arrive at the contrary conclusion." *Carter*, 900 F.3d at 768 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)) (emphasis and alteration in *Rice*).

The Court of Appeals of Ohio for the Seventh District summarized Henderson's offenses of conviction as follows:

> The jury found Appellant guilty of second-degree felonious assault, second-degree felony child endangering, and third-degree felony child endangering. The portion of the felonious assault statute he was found guilty of violating states:
>
> > (A) No person shall knowingly do either of the following:
> >
> > (1) Cause serious physical harm to another or to another's unborn;
> >
> > (D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree.
>
> R.C. 2903.11(A)(1)(D).
>
> Appellant was found guilty of second-degree felony child endangering defined as:
>
> > (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
> >
> > * * *
> >
> > (3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
> >
> > * * *
> >
> > (E)(1) Whoever violates this section is guilty of endangering children.
> >
> > * * *

7

> (3) If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree.  If the violation results in serious physical harm to the child involved, or if the offender previously has been convicted of an offense under this section or of any offense involving neglect, abandonment, contributing to the delinquency of, or physical abuse of a child, endangering children is a felony of the second degree.

R.C. 2919.22(B)(3)(E)(1)(3).

Appellant was found to have caused serious physical harm under this statute.

Appellant was also found guilty of third-degree felony child endangering as defined as:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.  It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.
>
> * * *
>
> (E)(1) Whoever violates this section is guilty of endangering children. (2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:
>
> * * *
>
> (c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree.

R.C. 2919.22(A)(E)(1)(2)(c).

*State v. Henderson*, 2018-Ohio-2816, 2018 WL 3428753, at *3-4 (Ohio Ct. App. June 29, 2018).

As the Seventh District Court of Appeals noted, each of Henderson's offenses of conviction "have a common element – to have caused serious physical harm," and the offense of [s]econd-degree felony child endangering also requires a substantial risk of serious physical harm and excessive corporal punishment." *Henderson*, 2018 WL 3428753, at *4.

8

Ohio law requires proof that "the corporal discipline was improper in light of all of the

surrounding facts and circumstances." *Id.* (citation omitted). The relevant factors are: "(1) the

child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-

corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of

mind while administering the punishment." *Id.* (citation and internal quotation marks omitted).

The evidence presented at trial showed Henderson paddled the 11-year-old victim on his

buttocks with a wooden paddle five times during one tutoring session. *Id.* at *5. Henderson's

efforts at noncorporal punishment during this tutoring session including yelling at and scaring his

students prior to paddling them. *Id.* There is no dispute that the behavior that preceded these

disciplinary methods was that the victim repeatedly failed to carry the number correctly while

attempting to solve a three-digit math problem. *Id.* Henderson "admitted [at trial] the victim was

not a behavioral problem." *Id.* Further, the evidence showed that, after the paddling, the victim's

skin was red and purple and that the wound was scabbed over with some bleeding. *Id.* The injury

took at least two weeks to heal and affected the victim's ability to sit. *Id.*

The Seventh District Court of Appeals concluded these facts, when viewed in the light most

favorable to the prosecution, demonstrated that the corporal punishment "was improper and

excessive." *Id.* The court also concluded the evidence established the victim suffered serious

physical harm because there was "evidence of treatment, pain caused by the paddling that lasted

over a period of time, and medical testimony from the treating doctor." *Id.* at *7. Finally, the court

concluded the evidence established a substantial risk of serious physical harm under Ohio law. *Id.* at

*8.

Judge Armstrong reviewed the state court record and concluded:

> any rational trier of fact could have found the essential elements beyond a reasonable
> doubt, including but not limited to the following facts set forth by the state appellate
> court: (1) E.D.'s mother testified it took the wound on E.D.'s buttocks over two
> weeks to heal; (2) E.D. testified that it hurt when Mr. Henderson hit him with the

board; (3) E.D.['s] aunt described the injury as open, bleeding, and scabby; and (4) E.D. told her it 'hurt to sit and everything.'"

(Doc. No. 29 at 30-31). Judge Armstrong also concluded Henderson failed to state a viable claim for relief in Ground Six because the "in loco parentis" doctrine does not implicate any element of the offense for which Henderson was sentenced. (*Id.* at 48).

Henderson lodges a wide range of objections, including: (1) the evidence did not establish the time at which or the date on which the injury occurred; (2) the trial court's judgment was not valid because it allegedly violated Ohio sentencing laws; (3) Dr. Melville's testimony was not credible because he specialized in child abuse pediatrics and not corporal discipline; and (4) the charges against him should have been tried to a "Subject Matter Panel of Peer Experts," not to a jury subject to "Cultural Miseducation and Eurocentric Domination." (Doc. No. 35 at 16-24). He also contends his affirmative defense of in loco parentis "does not [need to] directly challenge any element of an offense" and that it "prove[s] facts which somehow remove the Petitioner/defendant from the statutory threat of criminality." (*Id.* at 43) (quotation marks omitted).

Henderson's objections are not persuasive. First, the specific time at which the injury was inflicted is not relevant to the offenses of conviction. The Supreme Court of Ohio has held "[o]rdinarily, precise times and dates are not essential elements of offenses." *State v. Sellards*, 478 N.E.2d 781, 784 (Ohio 1985). At trial, the evidence showed the injury occurred after Henderson used a wooden paddle to discipline the victim for failing to correctly complete math problems and that Henderson only tutored the victim in math for approximately one week. *Henderson*, 2018 WL 3428753, at *1. Further, Henderson admitted using the wooden paddle on the victim. The evidence thus demonstrated the injury occurred during the time frame specified in the indictment. Ohio law requires no more.

Next, Henderson fails to show Dr. Melville's opinion testimony "that the victim's injury was the result of unreasonable physical discipline" was improper. *Id.* at *8. The trial court concluded

10

Dr. Melville's lengthy experience in cases of suspected child abuse was sufficient to permit him to offer his opinion about the reasonableness of Henderson's conduct, and the jury was permitted to give that testimony whatever weight the jury thought it deserved.  Moreover, even without Dr. Melville's testimony, the evidence that Henderson used a wooden paddle to discipline the victim for failing to correctly complete math problems, when viewed in the light most favorable to the prosecution, was sufficient to prove Henderson's actions were unreasonable.

Henderson's remaining objections also have no bearing on these grounds for relief.  The trial court's subsequent sentencing entry had no impact on the jury's verdict.  And Henderson was charged with violating Ohio law.  This entitled him to a jury trial subject to the protections of the United States and Ohio Constitutions, not to some undefined alternate proceeding tried before "subject matter experts."  Lastly, Henderson's in loco parentis defense has no merit, because Ohio law does not exempt Henderson from culpability for his criminal acts simply because he was a person in loco parentis.  *See* Ohio Rev. C. § 2919.22 (prohibiting a "person in loco parentis of a child" from "creat[ing] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support").

Henderson's objections lack merit, and I overrule them.  Any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crimes charged beyond a reasonable doubt.  *See Coleman*, 566 U.S. at 654.  Further, even if I could conclude the state court erred, Henderson would not be entitled to relief because § 2254(d)(2) "imposes a highly deferential standard" which requires that "the record must '*compel* the conclusion that the [state] court had no permissible alternative' but to arrive at the contrary conclusion."  *Carter*, 900 F.3d at 768 (quoting *Rice*, 546 U.S. at 341-42) (emphasis and alteration in *Rice*).  Henderson falls far short of this required showing.  I adopt Judge Armstrong's recommendation and deny Henderson's petition on Grounds One and Six.

### B.    GROUND TWO

In Ground Two, Henderson argues his sentence is contrary to law because the use of corporal discipline "was authorized and limited by common law." (Doc. No 1 at 8).  Judge Armstrong recommends I dismiss this ground because it seeks federal habeas relief for an error of state law and federal courts are not permitted to substitute their judgment for that of state courts on matters of state law. (Doc. No. 29 at 32-34).  Henderson objects to this recommendation, arguing his sentence is void and the Seventh District Court of Appeals erred by not modifying his sentence. (Doc. No. 35 at 25-26). (*See also* Doc. No. 1 at 8).

The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation and internal quotation marks omitted).  Claims involving a state court's sentencing decisions "are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law." *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001) (citing *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987)).

Henderson's objection lacks merit.  He claims he does not seek to challenge a matter of state law but:

> in actuality is asking the Court to preserve National Constitutionally protected [advantages, exemptions, privileges, rights, immunities, and liberties] and protect his 'status from the 'Chilling effect(s)' caused by invidious policies, customs, practices and/or procedures, retaliatory- applied maliciously and sadistically, perpetrated by the State agents for the very purpose of causing harm, to the extent of collusive and violate '<u>deliberate indifference</u>' (of protected classes).

(Doc. No. 22-1 at 61) (emphasis in original) (citation omitted).

To the extent Henderson argues his sentence is "wholly unauthorized by law," his argument is not persuasive.  Henderson's disagreement with Ohio law criminalizing his conduct does not make his sentence void.  And he has not pointed to any evidence that his sentence was the product of some retaliatory motive of the trial judge.

12

Moreover, to the extent Henderson claims he is actually innocent of his offenses of conviction, (*id.*), this claim also lacks merit.  Henderson appears to contend he is actually innocent because he used the wooden paddle on the victim five separate times and not five times, one right after the other.  (Doc. No. 35 at 42) ("Here the session lasted 4.5 hours, and was sequential, but not consecutive in time.  The sequential paddling was/is 'actual innocence' under the law, when/if the proper jury instructions are proffered to the jury.").  He additionally contends he was permitted to use corporal discipline with the victim because he "was licensed, authorized, [and] privileged to do so, and limited by common law."  (*Id.*).

In support of this argument, Henderson cites three opinions from the Office of the Ohio Attorney General: (1) No. 73-129, in which the Attorney General opined that boards of education could not adopt rules or regulations prohibiting teachers, administrators, and principals from inflicting corporal punishment pursuant to Ohio Revised Code § 3319.41; (2) No. 2001-039, in which the Attorney General opined "[a] family or household member . . . who administers corporal punishment to a child may be arrested and detained for the offense of domestic violence . . . when the punishment exceeds that which is reasonable and proper under the circumstances, even though the person's conduct falls short of that required to sustain an arrest and detention for the offense of endangering children under R.C. 2919.22(B)(3)"; and (3) No. 2002-019, in which the Attorney General opined in part that "[u]nder current Ohio law, no child abuse of a schoolchild occurs when reasonable corporal punishment that is reasonably necessary to preserve discipline is inflicted in accordance with R.C. 3319.41(E)."  (*See* Doc. No. 35 at 42).

These opinions do not help Henderson for two reasons.  First, none of the opinions immunize his conduct based upon any "in loco parentis" status, and second, because each of the opinions involves a past version of the statute, not the version in effect at the time of the offense conduct.  Section 3319.41, as last amended in 2009, states, in relevant part:

13

(A) No person employed or engaged as a teacher, principal, administrator, nonlicensed school employee, or bus driver in a public school may inflict or cause to be inflicted corporal punishment as a means of discipline upon a pupil attending such school.

(B) A person employed or otherwise engaged as a teacher, principal, or administrator by a nonpublic school, except as otherwise provided by the governing authority of the nonpublic school, may inflict or cause to be inflicted reasonable corporal punishment upon a pupil attending the school to which the person is assigned whenever such punishment is reasonably necessary in order to preserve discipline while the student is subject to school authority.

Ohio Rev. C. § 3319.41.

It is unlikely that § 3319.41(B) applies to Henderson, as he was a private tutor and not an employee of a nonpublic school in a school setting. But even if it did, the statute permits only the use of "reasonable corporal punishment . . . reasonably necessary . . . to preserve discipline." *Id.* There was no evidence presented at trial that the victim was misbehaving or that the use of corporal punishment was necessary to preserve discipline. Henderson acknowledges he used the paddle because the victim kept making the same error on his math problems. Further, there was evidence at trial, and the jury concluded, that Henderson's use of corporal punishment was "excessive under the circumstances" – in other words, that his conduct was unreasonable. *See* Ohio Rev. C. § 2919.22(B)(3). Henderson fails to show he is actually innocent.

I overrule Henderson's objections and dismiss Ground Two as not cognizable in habeas proceedings.

## C.    GROUND THREE

In Ground Three, Henderson asserts expert testimony from Dr. Melville that, in his opinion, the use of corporal punishment was unreasonable, was "improper, prejudicial, and absurd in this instance." (Doc. No. 1 at 9). Judge Armstrong recommends I dismiss this claim because it sets forth an alleged error of state law that is not cognizable in habeas proceedings. (Doc. No. 29 at 37-42). Henderson objects, arguing Dr. Melville was not qualified to offer an opinion as to the

14

reasonableness of the corporal punishment.  (Doc. No. 35 at 33-37).  Henderson's objection lacks merit.

"[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus," unless they "result in a denial of fundamental fairness."  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983) (citations omitted).  Henderson argues[1] that Dr. Melville's opinion testimony should not have been admitted because the reasonableness of the corporal punishment was within the experience of an ordinary juror and because Dr. Melville "was not a trauma abuse expert nor was he a Pedagogical Corporal Discipline Specialist."  (Doc. No. 35 at 33-34).  These arguments go solely to the admissibility of opinion testimony under Ohio Rule of Evidence 702.

The trial court's decision on this matter involved only the application of state law, and Henderson has not shown any alleged error resulted in a denial of fundamental fairness.  Therefore, this ground for relief is not cognizable in these proceedings.  I overrule Henderson's objection and dismiss Ground Three.

### D.     GROUNDS FOUR AND FIVE

In Grounds Four and Five, Henderson asserts his trial counsel was constitutionally ineffective because counsel failed to challenge the indictment on the grounds that it did not "set forth the requirements for alleging 'in loco parentis' with an affirmative defense of justifiable immunity," and because counsel failed to request "proper jury instructions on teacher qualified justifiable immunity alleging 'in loco parentis' status."  (Doc. No. 1 at 10-12).  Judge Armstrong

---

[1]  Henderson acknowledges case law permitting a habeas petitioner to pursue a due process claim rooted in an evidentiary ruling but offers no argument applying that case law to the facts of his case. (*See* Doc. No. 35 at 33).

recommends I dismiss these claims as procedurally defaulted or, in the alternative, deny them as without merit.  (Doc. No. 29 at 42-48).

The procedural default rule bars a federal habeas petitioner's claims if (1) the state court declined to consider the merits of an issue because the habeas petitioner failed to comply with state procedural rules, or (2) if the petitioner failed to fully pursue a claim through the state's "ordinary appellate review procedures" and now no longer is able to raise the claim, unless the petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice would occur if the claim is not reviewed.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)).  Henderson acknowledges he did not raise his ineffective assistance claims during his direct appeal but asserts his appellate attorney was ineffective in failing to raise those claims and that he is actually innocent.  (Doc. No. 35 at 38-45).

I need not decide the procedural default question before ruling against Henderson on the merits of his claims.  *See, e.g., Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citations omitted).  I already have rejected his actual-innocence arguments and concluded Henderson's status, whether as a teacher or in loco parentis, does not provide him with any form of immunity from his offenses of conviction.  Further, his ineffective assistance claims fail because he cannot show his attorneys rendered deficient performance or that he suffered prejudice from any of his attorneys' alleged errors.

An ineffective assistance of counsel claim requires proof the petitioner's attorney provided deficient representation and that the attorney's deficient performance caused the petitioner to suffer prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance may be found to be deficient if it is "objectively unreasonable under prevailing professional norms."  *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 688).  In order to establish prejudice, a defendant must show "there is a reasonable possibility that, but for counsel's

16

unprofessional errors, the result of the proceedings would have been different." *Hodges*, 727 F.3d at

534 (citing *Strickland*, 466 U.S. at 694).  If a court "can more easily dispose of an ineffective-

assistance-of-counsel claim for lack of prejudice, [it] need not consider counsel's alleged deficiencies

in performance." *Winborn v. United States*, 602 F. App'x 298, 301 (6th Cir. 2015) (citing *Ross v. United*

*States,* 339 F.3d 483, 492 (6th Cir. 2003)).

Henderson has not shown he suffered prejudice from his trial attorney's performance

because he cannot show there is any possibility, much less "a reasonable probability," that the

outcome of his trial would have been different if trial counsel had raised Henderson's desired

immunity defense. *Strickland*, 466 U.S. at 694.  Henderson provides no support for the proposition

that there is "teacher qualified justifiable immunity alleging 'in loco parentis' status," (Doc. No. 1 at

12), and, as I discussed above in relation to Ground Two, any request for a jury instruction

propounding that idea would not have merit.  *See* Ohio Rev. C. § 2919.22.

Further, a trial attorney's performance does not fall below an objective standard of

reasonableness when the attorney chooses not to request an unsupportable jury instruction.  *See, e.g.*,

*Hill v. Mitchell*, 400 F.3d 308, 323 (6th Cir. 2005) ("'Defense counsel need not make fruitless requests

for jury instructions.'") (quoting *State v. Hill*, 653 N.E.2d 271, 281 (Ohio 1995)).

I conclude the claims set forth in Grounds Four and Five have no merit, overrule

Henderson's objections, and deny his petition as to those grounds for relief.

### E.      CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner is not entitled to a certificate of appealability as a matter of right

but must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The petitioner need not demonstrate he should prevail on the merits.  Rather, a

petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude the issues presented are adequate to

17

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Henderson's petition has not met this standard.

For the reasons set forth in this decision, I certify there is no basis on which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

## V.    CONCLUSION

For the reasons stated above, I overrule Henderson's objections, (Doc. No. 35), to Judge Armstrong's Report and Recommendation, (Doc. No. 29), and adopt the Report and Recommendation.  I deny Henderson's petition as to Grounds One, Four, Five, and Six because those grounds for relief have no merit, and I dismiss his petition as to Grounds Two and Three because those grounds for relief are not cognizable in habeas corpus proceedings.

I also deny Henderson's motions to supplement and expand the record.  (Doc. Nos. 34 and 38).

Finally, I also conclude Henderson fails to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(b)(2), and decline to issue a certificate of appealability.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge